THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DAVID MAUST, Defendant-Appellee.

First District (4th Division) No. 1—88—2109

Opinion filed June 27, 1991.

 

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb and David R. Butzen, Assistant State's Attorneys, of counsel), for the People.

Randolph N. Stone, Public Defender, of Chicago (Z. Peter Tokatlian, Assistant Public Defender, of counsel), for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Defendant David Maust (defendant) made incriminating statements, regarding his involvement in a 1981 Chicago homicide for which he had not yet been charged, during custodial interrogation initiated by officers of the Cook County sheriff's police. At the time he gave these statements, defendant was in custody in a Texas prison for an unrelated criminal charge that had been filed against him in that State, and local counsel had been appointed to represent him regarding that offense.

After defendant made the incriminating remarks to Cook County authorities regarding the Chicago murder, he was indicted in Illinois for that offense and waived formal proceedings for his extradition from Texas to Illinois. In his written waiver of extradition

proceedings, defendant requested that "counsel be appointed to represent [him]." Later, when defendant was being returned to Illinois in the custody of Cook County sheriff's police, defendant made additional incriminating statements regarding the Chicago homicide.

Upon his return to Illinois, defendant was arraigned for the Chicago murder and appointed counsel to represent him. He filed motions to suppress his incriminating statements regarding the Chicago homicide, arguing that the statements had been taken in violation of his fifth and sixth amendment rights to counsel under the United States Constitution (U.S. Const., amends. V, VI). Following a hearing, the trial court suppressed both sets of statements made by defendant. The State appeals from this ruling.

We conclude that defendant's acceptance of counsel for the Texas criminal charge, where there is nothing in the record to show that defendant invoked his right to an attorney during any previous custodial interrogation, did not prohibit the Cook County sheriff's police from questioning defendant with respect to the unrelated Chicago homicide. However, we also determine that defendant effectively invoked his sixth amendment right to counsel when he waived formal extradition proceedings following his indictment for the Chicago murder. We find no basis to disturb the trial court's evidentiary finding that defendant's second set of statements, during his return journey to Illinois, was prompted by remarks from the Cook County sheriff's police who accompanied him. Accordingly, we reverse the trial court's suppression of defendant's first set of statements to authorities, affirm the court's suppression of defendant's second set of statements, and remand the matter for further proceedings consistent herewith.

The following facts derive from the hearing on defendant's motions to suppress his statements. In 1982, the Cook County sheriff's police learned that defendant was being held in a Texas prison. Officers William Behrens and Philip Bettiker of the Cook County sheriff's police travelled to the Galveston County, Texas, sheriff's office in May 1982 to question defendant regarding a 1981 Chicago murder. Before questioning defendant, the officers informed him of his *Miranda* rights and defendant acknowledged and waived these rights. Thereafter, defendant made statements incriminating himself in the 1981 Chicago murder.

At the time he made these statements to Cook County Officers Behrens and Bettiker, defendant was represented by local counsel on an unrelated Texas criminal offense for which defendant had been charged prior to the Cook County officers' conversation with

defendant. The officers were aware that defendant was being held for the Texas offense, but did not know that defendant had been appointed counsel with respect to the Texas charge.

Thereafter, an indictment was returned against defendant in Illinois charging him with the 1981 Chicago homicide and his concealment thereof. (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1, 9—3.1.) Defendant then waived formal extradition proceedings and agreed to return to Illinois to face the criminal indictments that had been filed against him in connection with the 1981 Chicago murder. In his written waiver of extradition proceedings, defendant requested that "counsel be appointed to represent [him]."

In December 1983, defendant was returned to Illinois in the custody of Officers Edward O'Donnell and Joseph Curtin of the Cook County sheriff's police. During this return trip, defendant made additional incriminating statements to the officers regarding the 1981 Chicago homicide. At the hearing on defendant's motion to suppress, defendant testified that his statements were prompted by remarks from the officers who accompanied him to Chicago. The officers testified that defendant's statements were volunteered and that they had said nothing to defendant to elicit his incriminating remarks.

Following his return to Illinois, defendant was arraigned and appointed counsel to represent him for the Chicago homicide. His attorney filed motions to suppress his statements to the Cook County sheriff's police that defendant made in May 1982 and December 1983. In these motions, defendant argued the May 1982 statements were taken in violation of the right to counsel defendant invoked when he was appointed local counsel for the unrelated Texas criminal charge. Defendant claimed that the December 1983 statements should be suppressed because they violated the right to counsel he invoked when he waived formal extradition proceedings, and because his remarks had occurred during interrogation prompted by the officers in violation of defendant's fifth and sixth amendment rights to counsel under the United States Constitution.

Following a hearing, the trial court granted the defendant's motions to suppress both sets of statements he made to the Cook County sheriff's police. The trial court specifically credited defendant's testimony that his December 1983 statements, during his return from Texas to Illinois, were prompted by comments from the officers who accompanied defendant during this trip. The State appeals from the trial court's suppression order.

## I

The defendant contends that his acceptance of legal representation at arraignment on the Texas offense served to trigger his right to counsel under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, during his subsequent custodial interrogation concerning the 1981 Chicago homicide with which he had not then been charged, and which was unrelated to the Texas offense. The State argues that the appointment of Texas counsel to represent defendant on the unrelated Texas criminal charge did not preclude the officers' questioning of defendant regarding the 1981 Chicago murder.

## A

■■ The defendant's argument in the instant appeal relies upon jurisprudence under the fifth and sixth amendments to the United States Constitution. Under the fifth amendment, no person "shall be compelled in any criminal case to be a witness against himself." (U.S. Const., amend. V.) To safeguard this right against self-incrimination during custodial interrogation, authorities must inform the suspect before questioning begins that the accused has a right to remain silent, that the statements he makes to authorities may be used as evidence against him, and that he has a right to the presence of an attorney, either appointed or retained. (*Miranda*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) If the accused indicates during custodial interrogation that he desires the assistance of counsel, additional questioning may resume only if the suspect initiates further dialogue with authorities. (*Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880; see also *Smith v. Illinois* (1984), 469 U.S. 91, 83 L. Ed. 2d 488, 105 S. Ct. 490 (*per curiam*).) The *Edwards* prohibition against subsequent police questioning following a suspect's request for counsel is not "investigation specific," but serves to bar subsequent interrogation of the accused regarding separate, unrelated offenses. *Arizona v. Roberson* (1988), 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093.

■■ ■ Upon the commencement of formal adversarial proceedings against an accused, the suspect is accorded the sixth amendment "right to *** have the Assistance of Counsel for his defence." (U.S. Const., amend. VI.) This guarantee applies to all critical stages of the prosecution including post-indictment interrogation. (*United States v. Gouveia* (1984), 467 U.S. 180, 81 L. Ed. 2d 146, 104 S. Ct. 2292.) The *Miranda* warnings are deemed sufficient to

apprise an accused of his right to counsel if police undertake questioning of the suspect regarding the charged offense before the suspect has been arraigned. (*Patterson v. Illinois* (1988), 487 U.S. 285, 101 L. Ed. 2d 261, 108 S. Ct. 2389.) Once the accused requests or is appointed counsel at arraignment or similar proceeding, authorities are prohibited from initiating further questioning of the defendant regarding the criminal activity for which the defendant has been indicted and counsel provided. (*Michigan v. Jackson* (1986), 475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404.) In addition, once the sixth amendment right to counsel has attached, authorities may not use surreptitious means to gain information from the accused regarding the charged offense. *Maine v. Moulton* (1985), 474 U.S. 159, 88 L. Ed. 2d 481, 106 S. Ct. 477; *United States v. Henry* (1980), 447 U.S. 264, 65 L. Ed. 2d 115, 100 S. Ct. 2183.

## B

To support his position that the acceptance of sixth amendment counsel serves to trigger the fifth amendment right to counsel, the defendant draws upon reasoning found in *Michigan v. Jackson* (475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404.) In *Jackson*, the Court determined that a suspect who accepts counsel at arraignment presumptively invokes his sixth amendment right to the assistance of counsel at all "critical stages" of the prosecution of the offense for which the accused has been charged, including post-arraignment custodial interrogation regarding the charged offense. The Court further held that the accused's acceptance of sixth amendment counsel at arraignment should be accorded the protection of the *Edwards* rule, under which a suspect's request for fifth amendment counsel during custodial interrogation bars subsequent questioning initiated by the authorities. *Edwards*, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880.

In reaching its conclusion that the *Edwards* rule should be extended to protect an accused from post-arraignment custodial interrogation for the charged offense, the Court noted that arraignment represents the stage at which the State has " 'committed itself to prosecute, *** [and] a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.' " (*Jackson*, 475 U.S. at 631, 89 L. Ed. 2d at 639, 106 S. Ct. at 1408, quoting *Gouveia*, 467 U.S. at 189, 81 L. Ed. 2d at 155, 104 S. Ct. at 2298.) The Court also determined that the suspect's acceptance of counsel should not be limited to assistance of counsel at trial, but included post-ar-

raignment custodial interrogation as well. In this regard, the Court observed that invocations of the right to counsel are presumptively accorded a broad, rather than a narrow, interpretation. (*Jackson*, 475 U.S. at 633, 89 L. Ed. 2d at 640, 106 S. Ct. at 1409.) The Court noted that a broad construction was appropriate because the average suspect does not know whether his acceptance of counsel serves to invoke his fifth amendment or his sixth amendment right to counsel. Rather, the suspect's acceptance of counsel at arraignment constitutes an expression that the accused " 'does not believe that he is sufficiently capable of dealing with his adversaries singlehandedly.' [Citation.]" 475 U.S. at 633 n.7, 89 L. Ed. 2d at 641 n.7, 106 S. Ct. at 1409 n.7.

Defendant argues that a suspect who accepts sixth amendment counsel at arraignment, indicating that "he is [not] sufficiently capable of dealing with his adversaries singlehandedly" during post-arraignment custodial interrogation regarding the charged offense, also thereby presumptively invokes his fifth amendment right to counsel for post-arraignment custodial interrogation regarding the charged offense. Defendant then asserts that an arraigned suspect, by invoking his fifth amendment right to counsel under *Miranda* for custodial interrogation pertaining to the charged offense, also presumptively invokes his *Miranda* right to counsel for custodial interrogation regarding uncharged, unrelated offenses. Defendant relies upon *Arizona v. Roberson* (486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093) to support his argument that the invocation of the fifth amendment right to counsel for post-arraignment custodial interrogation regarding the charged offense also presumptively encompasses subsequent custodial questioning regarding an unrelated, uncharged crime.

In *Roberson*, the Court held that a suspect who requests counsel during custodial interrogation presumptively invokes his *Miranda* right to the assistance of an attorney for all custodial interrogation, regardless of the crime for which questioning was initiated. The Court reasoned that a defendant who is subjected to custodial interrogation is "protected by the prophylaxis of having an attorney present to counteract the inherent pressures of custodial interrogation, which arise from the fact of such interrogation and exist regardless of the number of crimes under investigation or whether those crimes have resulted in formal charges." (*Roberson*, 486 U.S. at 685, 100 L. Ed. 2d at 716, 108 S. Ct. at 2100.) In the context of custodial interrogation, which by its very nature may pertain to any number of criminal investigations of the accused, the interrogated

suspect's "request for counsel—that he considers himself unable to deal with the pressures of custodial interrogation without legal assistance—does not disappear simply because the police have approached the suspect, still in custody, *** about a separate investigation." *Roberson*, 486 U.S. at 683, 100 L. Ed. 2d at 715, 108 S. Ct. 2099.

## C

The defendant's argument in the instant cause seeks to equate a suspect's sixth amendment acceptance of counsel, which takes place during arraignment, with an accused's fifth amendment request for counsel during custodial interrogation. Based upon this analogy, defendant asserts that the defendant's acceptance of sixth amendment counsel prohibits police interrogation of the accused regarding uncharged, unrelated offenses. We have previously rejected an argument identical to that raised by defendant herein. (*People v. Bryant* (1990), 202 Ill. App. 3d 290, 559 N.E.2d 930; *People v. Jackson* (1990), 198 Ill. App. 3d 831, 556 N.E.2d 619.) Moreover, the United States Supreme Court recently found defendant's attempted analogy unpersuasive. (*McNeil v. Wisconsin* (1991), 501 U.S. ___, 115 L. Ed. 2d 158, 111 S. Ct. 2204.) Accordingly, we reaffirm our adherence to our prior decisions.

■■ ■ Defendant's argument fails to take into account the contextual distinctions between custodial interrogation and arraignment. (See *McNeil*, 501 U.S. ___, ___, 115 L. Ed. 2d 158, 111 S. Ct. 2204.) A suspect undergoing custodial interrogation is confronted with open-ended police questioning, and additional interrogation of the accused following his request for the assistance of counsel carries a subtle, yet powerful, compulsion to make a self-incriminating statement. (*Roberson*, 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093; *Edwards*, 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880; *Miranda*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) At arraignment, an accused does not confront a "police-dominated atmosphere [ ] *** [t]hat generate[s] 'inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely'" (*Illinois v. Perkins* (1990), 496 U.S. 292, 296, 110 L. Ed. 2d 243, 250, 110 S. Ct. 2394, 2397, quoting *Miranda*, 384 U.S. at 445, 467, 16 L. Ed. 2d at 707, 719, 86 S. Ct. at 1612, 1624), and the arraignment is not intended to elicit an incriminating statement from the suspect. The purpose of arraignment is to explicitly apprise the defendant of the specifically enumerated charges that

have been lodged against him, and to inform the accused of his right to be represented by an attorney in defense of these charges. (See Ill. Rev. Stat. 1989, ch. 38, par. 113—1 *et seq.*) Given the circumstances surrounding acceptance of counsel at arraignment, subsequent custodial interrogation of an arraigned suspect on an uncharged, unrelated offense will present "little chance, as there was in *Edwards*, that the defendant [will] perceive[ ] the *Miranda* warnings *** as a denial of his right to have counsel present during custodial interrogation." (*Jackson*, 198 Ill. App. 3d at 844; see *McNeil*, 501 U.S. ___, 115 L. Ed. 2d 158, 111 S. Ct. 2204.) In addition, defendant's proposed rule would significantly hamper legitimate police investigation of an accused's involvement in uncharged, unrelated criminal activity. (*McNeil*, 501 U.S. ___, 115 L. Ed. 2d 158, 111 U.S. 2204.) Consequently, we do not believe that the reasoning of *Roberson* or *Jackson* supports defendant's position. (See *McNeil*, 501 U.S. ___, 115 L. Ed. 2d 158, 111 S. Ct. 2204.) " 'Fidelity to the doctrine announced in *Miranda* requires that it be enforced strictly, but only in those types of situations in which the concerns that powered the decision are implicated.' " *Perkins*, 496 U.S. at 296, 110 L. Ed. 2d at 250, 110 S. Ct. at 2397, quoting *Berkemer v. McCarty* (1984), 468 U.S. 420, 437, 82 L. Ed. 2d 317, 333, 104 S. Ct. 3138, 3148-49.

■ In view of the foregoing considerations, we conclude that a defendant who has not previously invoked his right to counsel at custodial interrogation, and who accepts assistance of an attorney at arraignment, has not presumptively invoked his fifth amendment right to representation of counsel during subsequent custodial interrogation regarding unrelated criminal activity for which the accused had not yet been charged.

## II

■ Based upon this determination, we find that the defendant's May 1982 statements to Cook County authorities were not obtained in violation of his fifth amendment right to counsel. Defendant had a right to the presence of an attorney at all custodial interrogation, and if he requested the assistance of counsel, subsequent questioning could occur only upon defendant's initiation. (*Roberson*, 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093.) However, there is nothing in the record to indicate that the defendant invoked his right to counsel during any custodial interrogation that might have taken place before defendant was arraigned and accepted counsel for the unrelated Texas offense. The record also does not show that

defendant requested counsel at any custodial interrogation that might have occurred following his Texas arraignment. When defendant was questioned by Cook County sheriff's police in May 1982, he was informed of and waived his *Miranda* rights, including his right to an attorney. Defendant does not argue on appeal that his waiver of *Miranda* rights during this questioning was involuntary, unintelligent, or unknowing. On this record, the custodial interrogation undertaken by the Cook County sheriff's police in May 1982 regarding the 1981 Chicago homicide did not violate defendant's fifth amendment right to counsel under *Miranda*.

We also note that the defendant's sixth amendment right to counsel for the Chicago murder offense did not attach until adversarial proceedings had been instituted against him for the Chicago homicide. (*Perkins*, 496 U.S. 292, 110 L. Ed. 2d 243, 110 S. Ct. 2394; *Jackson*, 475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404.) When defendant was initially questioned in May 1982, he had not yet been indicted for the Chicago murder. Consequently, he had no sixth amendment right to counsel with respect to the homicide offense when he was questioned by Cook County sheriff's police in May 1982. *People v. Martin* (1984), 102 Ill. 2d 412, 466 N.E.2d 228; *United States ex rel. Espinoza v. Fairman* (1987), 813 F.2d 117, 120-22.

For these reasons, we reverse the trial court's suppression of defendant's May 1982 statements to Cook County sheriff's police.

### III

The State argues that the trial court should not have suppressed defendant's second set of incriminating statements, made to Cook County authorities in December 1983 while defendant was being returned to Illinois. We find no error in the trial court's ruling.

■ According to the record, defendant was indicted for the Chicago homicide in June 1982. Upon his indictment, defendant had a sixth amendment right to counsel regarding this criminal charge. (*Perkins*, 496 U.S. 292, 110 L. Ed. 2d 243, 110 S. Ct. 2394; *Jackson*, 475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404.) Thereafter, defendant waived formal extradition proceedings regarding this offense and, in his written waiver, requested that counsel be appointed to represent him. Since the defendant requested counsel in the context of his waiver of extradition proceedings pertaining to the 1981 Chicago homicide charges, defendant's request is reasonably construed as the request for assistance of counsel for the 1981 Chicago homicide

charges. Because of this invocation of his right to counsel with respect to the Chicago homicide, defendant could not be questioned regarding this offense unless defendant initiated further communication with authorities. *Jackson*, 475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404.

The State also contends that the evidence of record shows that defendant volunteered his incriminating statements to Cook County authorities while defendant was being returned to Illinois in December 1983. However, defendant testified that his statements were prompted by remarks regarding the Chicago homicide that were first made by the officers who accompanied him from Texas to Illinois. It is well established that comments or remarks from police regarding a criminal investigation may rise to "interrogation" of the accused. *Rhode Island v. Innis* (1980), 446 U.S. 291, 301, 64 L. Ed. 2d 297, 308, 100 S. Ct. 1682, 1689 (interrogation includes "any words or actions on the part of the police *** that the police should know are reasonably likely to elicit an incriminating response from the suspect").

The State does not argue that the officers' remarks were not designed to elicit defendant's incriminating statement. The State contends that the trial court should have discredited defendant's testimony to the effect that it was the officers who initiated conversation regarding the Chicago homicide. However, the trial court accepted defendant's testimony, and it is not our function to reweigh the credibility of testimony presented to the trial court at a motion to suppress hearing. (*People v. Evans* (1988), 125 Ill. 2d 50, 77, 530 N.E.2d 1360.) We cannot say that the trial court's finding was against the manifest weight of the evidence, as the defendant's testimony at the suppression hearing fully supports the trial court's ruling. Accordingly, we conclude that the defendant's second set of statements to authorities, in December 1983, was obtained in violation of defendant's sixth amendment right to counsel that had accrued to and been invoked by defendant with respect to the 1981 Chicago homicide.

For the reasons stated, the order of the trial court is reversed with respect to suppression of defendant's May 1982 statements, affirmed with respect to suppression of defendant's December 1983 statements, and remanded for further proceedings consistent herewith.

Affirmed in part; reversed in part and remanded.

LINN and JOHNSON, JJ., concur.