STATE of Wisconsin, Plaintiff-Appellant,

v.

Brad E. FORBUSH,
Defendant-Respondent-Petitioner.

Supreme Court

*No. 08AP3007–CR. Oral argument September 14, 2010.
—Decided April 29, 2011.*

2011 WI 25

(Also reported in 796 N.W.2d 741.)

622

623

For the defendant-respondent-petitioner, there were briefs filed by *Craig Mastantuono, Rebecca M. Coffee,* and *Mastantuono Law Office, S.C.,* Milwaukee, and oral argument by Mr. Mastantuono.

For the plaintiff-appellant, there was a cause argued by *Aaron R. O'Neil,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

An amicus curiae brief was filed by *Nicholas L. Chiarkas,* state public defender and *Colleen D. Ball,* assistant state public defender.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. We review a published decision of the court of appeals[1] reversing the circuit court's[2] order granting Brad Forbush's (Forbush) motion to suppress statements he made during a police interrogation. The central issue presented is whether the United States Supreme Court's decision in *Montejo v. Louisiana,* 556 U.S. __, 129 S. Ct. 2079 (2009), requires us to overrule Wiscon-

---

[1] *State v. Forbush,* 2010 WI App 11, 323 Wis. 2d 258, 779 N.W.2d 476.

[2] The Honorable Terence T. Bourke of Sheboygan County presided.

sin precedent that established the parameters of a charged defendant's right to counsel in Wisconsin when a defendant, who has affirmatively invoked his constitutional right to counsel by retaining and receiving the services of counsel on pending charges, is subjected to questioning by law enforcement.

¶ 2. Forbush contends that his right to counsel under the Sixth Amendment of the United States Constitution and Article I, Section 7 of the Wisconsin Constitution was violated by police interrogation because he had affirmatively invoked his right to counsel and counsel was not present when he was asked to waive the right he previously invoked. I agree. For the reasons discussed below, I conclude that in the factual context herein presented, *Montejo* does not sanction the interrogation that occurred. I so conclude because Forbush's right to counsel under the federal or state constitution had attached and was invoked affirmatively by Forbush before the investigator's questioning was initiated. I also conclude that the circuit court's finding that the investigator knew Forbush had secured legal counsel for the pending charges is not clearly erroneous. Furthermore, Forbush was not required to "re-invoke" his right to counsel when the investigator initiated interrogation. Accordingly, Forbush's statements must be suppressed, and we reverse the decision of the court of appeals.[3]

---

[3] Chief Justice Shirley S. Abrahamson, joined by Justice Ann Walsh Bradley in an opinion based on reasoning that differs from that employed herein, concurs in concluding that Forbush's Article I, Section 7 right to counsel was violated and that his statements to Norlander must be suppressed; Justice David T. Prosser, in a separate opinion based on reasoning that differs from that employed herein and that employed by Chief Justice Abrahamson, concurs in concluding that Forbush's

## I. BACKGROUND

¶ 3. On May 8, 2008, the State of Wisconsin filed a criminal complaint against Forbush charging him with attempted second-degree sexual assault and false imprisonment. A warrant was issued for his arrest. Forbush was arrested in Michigan and made a court appearance there with an attorney he retained for these charges. His brother, Scott Forbush, a licensed Michigan attorney (Attorney Forbush), provided legal representation to Forbush. With the advice of counsel, Forbush waived extradition proceedings. He was transported to Wisconsin in the early morning hours of May 16, 2008. The State stipulated that the district attorney's office was notified that Forbush was represented by counsel prior to Detective Cory Norlander's (Norlander) interrogation of Forbush. Attorney Forbush, as Forbush's lawyer for the pending charges, had contact with Detective Ethan Weber, of the Sheboygan County Sheriff's Department.

¶ 4. On the morning of May 16, Forbush was questioned by Norlander, also of the Sheboygan County Sheriff's Department. Norlander had reviewed Detective Weber's reports prior to his interrogation of Forbush. The interrogation was videotaped. Norlander read Forbush the *Miranda*[4] warnings. After 28 minutes of inquiry regarding whether Forbush was willing to waive his right to have counsel present, Norlander repeatedly told Forbush that he would like to hear his side of the story; that it was usually better if law enforcement knew both sides of the story; that Norlander knew only one side of the story, but that he

statements to Norlander must be suppressed; Justice N. Patrick Crooks, Justice Annette Kingsland Ziegler and Justice Michael J. Gableman dissent and have filed dissenting opinions.

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

could not hear Forbush's side unless Forbush signed the waiver of rights form. Forbush subsequently gave a verbal waiver and completed a waiver of rights form. Throughout the reminder of the interrogation, Forbush made potentially incriminating statements.

¶ 5. Immediately following the interrogation, Forbush was taken to his initial appearance. Attorney Rebecca Coffee, an attorney with the Mastantuono Law Office, who together with Attorney Forbush has represented Forbush on these charges throughout this case, was present at the initial hearing.

¶ 6. Before trial, Forbush moved to suppress his statements to Norlander on the grounds that his right to counsel was violated[5] because he was represented by counsel on these charges at the time of the interrogation. Specifically, Forbush asserted that he was represented both by Attorney Forbush, a Michigan attorney, and by Attorney Craig Mastantuono, a Wisconsin attorney, at the time of his interrogation.[6] Because of his representation by counsel on these charges and because he had been formally charged, Forbush argued that any statements elicited by Norlander violated his Sixth Amendment and Article I, Section 7 right to counsel.

¶ 7. The circuit court found that law enforcement knew Forbush was represented by counsel on the pending charges and concluded that the State had violated Forbush's Sixth Amendment right to counsel. The cir-

---

[5] Forbush also argued that there was a Fifth Amendment violation, but the circuit court's Fifth Amendment holding is not on appeal.

[6] Attorney Mastantuono has continued to represent Forbush throughout this appeal.

cuit court granted Forbush's motion, barring the State from introducing Forbush's statements to Norlander.

¶ 8.  The State appealed and the court of appeals reversed the suppression order. *State v. Forbush,* 2010 WI App 11, ¶ 2, 323 Wis. 2d 258, 779 N.W.2d 476. The court of appeals concluded that sometime after the circuit court's decision, the United States Supreme Court in *Montejo* overruled *Michigan v. Jackson,* 475 U.S. 625 (1986), and held that the Sixth Amendment does not prevent police from questioning charged and represented defendants. *Forbush,* 323 Wis. 2d 258, ¶ 2. Because the court of appeals concluded that the circuit court's holding was based entirely on this court's conclusions in *State v. Dagnall,* 2000 WI 82, 236 Wis. 2d 339, 612 N.W.2d 680, and that *Dagnall* was effectively overruled by *Montejo,* the court of appeals reversed the circuit court's suppression order. *Forbush,* 323 Wis. 2d 258, ¶¶ 2, 13.

¶ 9.  We granted review and now reverse the court of appeals.

## II.  DISCUSSION

### A.  Standard of Review

¶ 10.  At issue is whether the United States Supreme Court's decision in *Montejo* requires us to overrule Wisconsin law that established the parameters of a defendant's right to counsel after he has affirmatively invoked his Sixth Amendment right to counsel by retaining and receiving the services of counsel on the pending charges. This issue "involves the application of constitutional principles to historical facts." *State v. Hoppe,* 2003 WI 43, ¶ 34, 261 Wis. 2d 294, 661 N.W.2d

407. We have adopted a two-part standard of review for questions of constitutional fact. *Id.* We uphold the circuit court's findings of historical or evidentiary fact unless they are clearly erroneous. *State v. Arias,* 2008 WI 84, ¶ 12, 311 Wis. 2d 358, 752 N.W.2d 748. We review independently the application of constitutional principles to the facts found. *State v. Ward,* 2009 WI 60, ¶ 17, 318 Wis. 2d 301, 767 N.W.2d 236.

## B.  Right to Counsel

¶ 11.  On appeal, Forbush argues that the interrogation by Norlander violated his right to counsel. Forbush contends that he invoked his right to counsel under the Sixth Amendment of the United States Constitution and Article I, Section 7 of the Wisconsin Constitution when he affirmatively requested and received representation of counsel, Attorney Forbush and the Mastantuono Law Office, for these charges. Accordingly, Forbush argues that he was represented by counsel when Norlander questioned him and that the State was aware of this representation. The State contends that *Montejo* has removed the restrictions on questioning a represented defendant unless he requests counsel at the time of questioning.

¶ 12.  I begin my discussion with the framework for the right to counsel that has been employed during interpretations of the United States and Wisconsin Constitutions, in order to show the contours of the right when Forbush was interrogated. I then examine the rule of law established by the Supreme Court's decision in *Montejo.* Finally, I discuss the current viability of the pre-*Montejo* standards in Wisconsin and apply the applicable law to Forbush.

### a. General framework

¶ 13.    The Sixth Amendment guarantees that "the accused shall enjoy . . . the Assistance of Counsel for his defence."[7] Similarly, Article I, Section 7 of the Wisconsin Constitution guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel."[8] The right to counsel is a fundamental right guaranteed to criminal defendants in this country. *Johnson v. Zerbst,* 304 U.S. 458, 462 (1938). The United States Supreme Court has declared that the right to counsel:

---

[7] In full, the Sixth Amendment reads:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.

The Supreme Court applied the Sixth Amendment right to counsel to the states through incorporation by the Due Process Clause of the Fourteenth Amendment in *Gideon v. Wainwright,* 372 U.S. 335 (1963).

[8] In full, Article I, Section 7, "Rights of accused," reads:

> In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

Wis. Const. art. I, § 7.

is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. . . . It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel.

*Id.* at 462–63. The Sixth Amendment "guarantees the accused . . . the right to rely on counsel as a 'medium' between him and the State." *Maine v. Moulton,* 474 U.S. 159, 176 (1985). "The right to the assistance of counsel guaranteed by the Sixth and Fourteenth Amendments is indispensable to the fair administration of our adversarial system of criminal justice." *Id.* at 168–69.

██ █

¶ 14.   It is important to note that "[o]nce the right to counsel has attached and been asserted, the State must of course honor it." *Id.* at 170. "[T]he prosecutor and police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the right to counsel." *Id.* at 171. In *Moulton,* the right to counsel was invoked by the appearance of Moulton and his attorney before the Maine Superior Court for Waldo County, where a plea of not guilty to the crimes charged was entered. *Id.* at 162.

██

¶ 15.   Generally, the right to counsel under the Sixth Amendment and Article I, Section 7 " 'attaches only at or after the time that adversary judicial proceedings have been initiated against [a defendant].' "[9] *United States v. Gouveia,* 467 U.S. 180, 187 (1984) (quoting *Kirby v. Illinois,* 406 U.S. 682, 688 (1972));

---

[9] *Cf., Escobedo v. Illinois,* 378 U.S. 478 (1964).

*State v. Sanchez,* 201 Wis. 2d 219, 226, 548 N.W.2d 69 (1996) (concluding that the Article I, Section 7 right to counsel does not create a right different from the Sixth Amendment right to counsel).

¶ 16.   The Sixth Amendment right to counsel extends to all "critical stages" of the criminal proceedings, including the period prior to trial. *United States v. Wade,* 388 U.S. 218, 227–28 (1967). This is particularly important because pretrial proceedings " 'might well settle the accused's fate and reduce the trial itself to a mere formality.' " *Moulton,* 474 U.S. at 170 (quoting *Wade,* 388 U.S. at 224). As a general rule, "[t]he right to counsel under the Sixth Amendment arises after adversary judicial proceedings have been initiated—in Wisconsin, by the filing of a criminal complaint or the issuance of an arrest warrant." *Dagnall,* 236 Wis. 2d 339, ¶ 30. Once a criminal complaint or an arrest warrant has been issued, the right to counsel attaches. *Id.,* ¶ 32.

¶ 17.   Prior to charging, the right to counsel during in-custody police questioning is afforded under the Fifth Amendment and Article I, Section 8 of the Wisconsin Constitution. Both the Supreme Court and this court have held that under the Fifth Amendment, a suspect must unequivocally and unambiguously request counsel before police are required to cease questioning. *See Davis v. United States,* 512 U.S. 452, 459 (1994); *State v. Jennings,* 2002 WI 44, ¶ 44, 252 Wis. 2d 228, 647 N.W.2d 142.[10]

---

[10] *Jennings* also addressed Article I, Section 8 of the Wisconsin Constitution and chose to interpret it consistent with the Supreme Court's interpretation of the Fifth Amendment of the

¶ 18. As with the Fifth Amendment right to counsel, the Sixth Amendment right to counsel that has attached with the filing of a criminal complaint or the issuance of an arrest warrant is not automatically invoked when such a defendant is questioned by the police. Consequently, police questioning of a charged defendant is not automatically prohibited. Rather, to have a valid claim that one's constitutional rights have been violated, a charged defendant must show that he invoked his right to counsel. *McNeil v. Wisconsin*, 501 U.S. 171, 175–79 (1991).

¶ 19. *Dagnall* described some circumstances under which a charged defendant may invoke his right to counsel.[11] In *Dagnall*, the Dane County District Attorney's office issued a criminal complaint charging Dagnall with homicide. *Dagnall*, 236 Wis. 2d 339, ¶ 5. Shortly thereafter, Dagnall was arrested in Florida. *Id.*

¶ 20. On the same day that Dagnall was arrested, Attorney James H. Conners delivered a letter to the Dane County Sheriff's Department informing them that he had been retained to represent Dagnall on the pending charges, and that he did not want Dagnall questioned by anyone about the homicide. *Id.*, ¶ 6. The next day two detectives from Dane County went to Florida and questioned Dagnall. *Id.*, ¶ 7. They ques-

United States Constitution. *State v. Jennings*, 2002 WI 44, ¶ 40 & n.8, 252 Wis. 2d 228, 647 N.W.2d 142.

[11] In *Dagnall*, the issue of whether Dagnall had invoked his right to counsel under the Wisconsin Constitution was not raised and therefore, this court did not directly address it. But rather, *Dagnall* interpreted the law relative to a charged defendant through reference to past Sixth Amendment interpretations. *State v. Dagnall*, 2000 WI 82, ¶ 28 n.7, 236 Wis. 2d 339, 612 N.W.2d 680.

tioned him on three separate occasions in which Dagnall made incriminating statements.[12] *Id.,* ¶¶ 10–13. While talking with the detectives, Dagnall mentioned his attorney more than once. First, prior to questioning, he told the detectives, "My lawyer told me that I shouldn't talk to you guys." *Id.,* ¶ 9. While being transported to the Dane County jail, he also told the detectives that his lawyer "would be mad at him for speaking" to them. *Id.,* ¶ 13. Finally, when the detectives approached Dagnall at the Dane County jail, Dagnall asked whether Attorney Conners knew Dagnall was back in town and when the detectives said that they did not know, the officers recalled that Dagnall said that "it would probably be best to have his attorney present." *Id.,* ¶ 14. The detectives ceased all questioning at that point. *Id.*

¶ 21.  As part of our discussion in *Dagnall,* we reviewed the modes by which an accused may invoke his right to counsel, thereby mandating the cessation of questioning by the police. After thorough consideration of Supreme Court precedent, we concluded "that a charged defendant in custody who does not have counsel must invoke, assert, or exercise the right to counsel to prevent interrogation." *Id.,* ¶ 48. We went on, however, to distinguish a criminal defendant who has an attorney: "We do not, however, ... require an accused defendant *who has an attorney for the crime charged* to show the same diligence as a defendant without an attorney." *Id.,* ¶ 49. We summarized the rule as follows:

> The Sixth Amendment right to counsel does not attach until the initiation of criminal charges. It then attaches for those specific charges. The right must be "invoked"

---

[12] The detectives read Dagnall his *Miranda* warnings on each occasion before they questioned him. *Id.,* ¶¶ 10, 12.

by the accused to terminate police questioning before an attorney has been retained . . . .

After an attorney represents the defendant on particular charges, the accused may not be questioned about the crimes charged in the absence of an attorney. The authorities must assume that the accused does not intend to waive the constitutionally guaranteed right to the assistance of counsel.

*Id.*, ¶¶ 52–53.

¶ 22.   We clarified that the right to counsel was not violated when a represented defendant makes an "unguarded outburst" or himself initiates the contact with the police. *Id.*, ¶ 54. Moreover, we pointed out that an additional consideration in this analysis is whether the police have knowledge that the accused has obtained representation. *Id.*, ¶ 51. We explained that "[t]o require an accused person to assert the right to counsel after the accused has counsel would invite the government to embark on a persistent campaign of overtures and blandishments to induce the accused into giving up his rights." *Id.*, ¶ 59.

¶ 23.   The question of whether an accused defendant actually invoked his right to counsel was addressed in *Smith v. Illinois,* 469 U.S. 91 (1984). There, the Supreme Court concluded that the defendant's statement "I'd like to do that[,]" upon being told that he had the right have an attorney present, was sufficient to invoke the right to counsel. *Id.* at 96. The Court explained that nothing in Smith's invocation "reasonably would have suggested equivocation." *Id.* at 97. The Court also concluded that statements made after Smith's invocation of his right to counsel could not be used to defeat that right once it was invoked. *Id.*

¶ 24.   As the Court explained by quoting the trial court, "a statement either is such an assertion of the

635

right to counsel or it is not." *Id.* at 97–98 (brackets omitted). In *Davis,* the Court relied on the reasoning of *Smith* to " 'determine whether [an] accused actually invoked his right to counsel.' " *Davis,* 512 U.S. at 458 (quoting *Smith,* 469 U.S. at 95). The Supreme Court explained that whether a defendant has invoked his right to counsel is an "objective inquiry." *Id.* at 458–59. The Court noted that such an objective inquiry " 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.' " *Id.* (quoting *McNeil,* 501 U.S. at 178).

¶ 25.  The Court in *Smith* also discussed the difference between invoking the right to counsel and the waiver of that right, concluding that "a valid waiver 'cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation.' " *Smith,* 469 U.S. at 98 (quoting *Edwards v. Arizona,* 451 U.S. 477, 484 (1981)).

■■■■

¶ 26.  A charged defendant may invoke his Sixth Amendment right to counsel at an extradition proceeding, even though it is a separate proceeding from the criminal action for which extradition is sought. *See People v. Maust,* 576 N.E.2d 965, 971 (Ill. App. 1 Dist. 1991) (concluding that Maust invoked his Sixth Amendment right to counsel for pending charges when he requested counsel during a hearing where he waived formal extradition); *see also State v. March,* 2011 WL 332327, at *25 (Tenn. Crim. App. Jan. 27, 2011) (concluding that March invoked his Sixth Amendment right to counsel by retaining counsel before he was returned from California to Tennessee).

### b. The effect of *Montejo*

¶ 27. The State now urges that we overrule *Dagnall*'s conclusion that the waiver of the right to counsel by a charged defendant who has affirmatively invoked his right to counsel by securing the services of an attorney for the crimes charged is invalid unless the defendant initiates the contact with the police. The State's argument is based on the 2009 Supreme Court decision in *Montejo;* however, *Montejo* does not require the result that the State seeks. *Montejo* decided only that courts need not "*presume* that such a waiver is invalid under certain circumstances." *Montejo*, 556 U.S. at ___, 129 S. Ct. at 2085. The "certain circumstances" of *Montejo* were a charged defendant for whom the Sixth Amendment right to counsel had attached and who was represented. However, the Court concluded that it should not presume that Montejo had actually invoked his Sixth Amendment right to counsel, simply from the fact that he was represented. Accordingly, the Supreme Court remanded the case to the trial court to determine whether Montejo had actually invoked his Sixth Amendment right to counsel such that the protections of *Edwards* would apply. *Id.* at 2091–92.

¶ 28. Montejo was charged with first-degree murder and at his 72–hour hearing, the Louisiana trial court ordered the Office of Indigent Defender to represent him. *Id.* at 2082. Montejo did not affirmatively request and retain counsel for the crimes charged. That same day, two police detectives took Montejo on an "excursion" to help them locate the murder weapon. *Id.*

¶ 29. While the exact details were disputed, at some point during the excursion, the police convinced Montejo to write an inculpatory letter of apology to the widow of the victim. *Id.* Prior to writing the letter,

637

Montejo was read his *Miranda* warnings. *Id.* At trial, the letter was introduced over Montejo's objection. *Id.*

¶ 30. On appeal to the Louisiana Supreme Court, Montejo argued that admission of the letter into evidence was a violation of his Sixth Amendment right to counsel because the Office of Indigent Defender had been ordered to represent him; therefore, he was represented when the police initiated contact with him. *Id.* at 2082–83. He based his argument on the rule of *Jackson*. *Jackson* held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Jackson*, 475 U.S. at 636.[13]

¶ 31. The Louisiana Supreme Court rejected Montejo's argument, reasoning that the *Jackson* rule is not triggered "unless and until the defendant has actually requested a lawyer or has otherwise asserted his Sixth Amendment right to counsel." *Montejo*, 556 U.S. at ___, 129 S. Ct. at 2083. Since the Louisiana trial court ordered that the Office of Indigent Defender represent Montejo at the 72–hour hearing, and Montejo did not request counsel himself, the Louisiana Supreme Court held that Montejo never "actually requested a lawyer." *Id.*

---

[13] The *Jackson* case consolidated the cases of two separate defendants in two separate crimes, defendant Bladel and defendant Jackson. *Michigan v. Jackson*, 475 U.S. 625 (1986). Both defendants expressly requested appointment of counsel at their arraignments because they were indigent. *Id.* at 627–28. Detectives involved in each respective investigation were present at the arraignments and aware of the requests. *Id.* Nonetheless, in each instance, before the defendant was provided an opportunity to consult with counsel, police initiated further interrogations in which they obtained incriminating statements. *Id.* Both defendants were read *Miranda* warnings before they made any statements. *Id.*

¶ 32. Montejo appealed to the United States Supreme Court. The Supreme Court first rejected the Louisiana court's interpretation of the *Jackson* rule. *Id.* at 2083–84. The Court pointed out the varying practices throughout the states, noting that "[i]n some two dozen [states], the appointment of counsel is automatic upon a finding of indigency; and in a number of others, appointment can be made either upon the defendant's request or *sua sponte* by the court." *Id.* at 2083 (citations omitted). The Court noted that nothing in *Jackson* indicated that the Court was aware that some states do not require indigent defendants to assert their right to counsel prior to appointment, and, therefore, nothing in *Jackson* indicated how the *Jackson* rule would apply to such states. *Id.* at 2083–84. The Court explained:

> The Louisiana Supreme Court's answer to that unresolved question is troublesome. The central distinction it draws—between defendants who "assert" their right to counsel and those who do not—is exceedingly hazy when applied to States that appoint counsel absent request from the defendant. . . . How does one affirmatively accept counsel appointed by court order? An indigent defendant has no right to choose his counsel, so it is hard to imagine what his "acceptance" would look like, beyond the passive silence that Montejo exhibited.

*Id.* at 2084 (internal citation omitted).

¶ 33. After rejecting the Louisiana court's interpretation of *Jackson*, the Court in *Montejo* discussed the viability of the *Jackson* rule with regard to appointed counsel by reaffirming those principles that it sought not to disturb. First, the Court noted that "once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Id.* at 2085 (citing *Wade,* 388 U.S. at

639

227–28). Second, the Court confirmed that "[i]nterrogation by the State is such a stage." *Id.* (citing *Massiah v. United States,* 377 U.S. 201, 204–05 (1964)). Third, the Court pointed out that the "Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent." *Id.* (citing *Patterson v. Illinois,* 487 U.S. 285, 292 n.4 (1988)). Fourth, the Court reaffirmed the anti-badgering protections afforded by *Edwards.*

¶ 34. The court then noted that the "*only* question raised by this case, and the only one addressed by the *Jackson* rule, is whether courts must *presume* that such a waiver is invalid under certain circumstances." *Id.* The "certain circumstances" referenced in the Court's framing of the issue in *Montejo* were a charged defendant for whom counsel had been appointed by the court, but for whom the Supreme Court could not determine whether he had actually invoked his right to counsel and the protections that would then flow from *Edwards.* Accordingly, the Court remanded the case to determine whether the "protections already provided by *Edwards*" apply. *Id.* at 2091–92.

¶ 35. The *Montejo* decision did not conclude that a charged defendant who has affirmatively invoked his Sixth Amendment right to counsel by retaining and receiving the services of a lawyer for the offenses charged must "re-invoke" his Sixth Amendment right to counsel every time law enforcement attempts to interrogate him. To the contrary, the Court cited *Massiah* with approval, wherein the Court concluded that eliciting testimony of a defendant who has appeared in court with counsel retained for the pending charges was violative of the defendant's Sixth Amendment rights. *Id.* at 2085; *Massiah,* 377 U.S. at 206–07.

640

¶ 36. The Court in *Montejo* examined the origins of the *Jackson* rule. It highlighted that the *Jackson* rule was created by analogy to the Fifth Amendment presumptive rule created in *Edwards*. The presumptive rule in *Edwards* mandates that under the Fifth Amendment,

> when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards,* 451 U.S. at 484–85. *Montejo* explained that the purpose of the *Edwards* rule was to " 'prevent police from badgering a defendant into waiving his previously asserted [] rights.' " *Montejo,* 556 U.S. at ___, 129 S. Ct. at 2085 (quoting *Michigan v. Harvey,* 494 U.S. 344, 350 (1990)). Accordingly, it reasoned that the same rationale drives the *Jackson* rule in the Sixth Amendment context.[14] *Id.* at 2086. "*Edwards* and *Jackson* are meant to prevent police from badgering defendants into changing their minds about their rights, but a defendant who never asked for counsel has not yet made up his mind in the first instance." *Id.* at 2087.

---

[14] The dissent disagreed, arguing that the purpose of the Jackson rule was to preserve the "unique protections afforded to the attorney-client relationship by the Sixth Amendment." *Montejo v. Louisiana,* 556 U.S. ___, 129 S. Ct. 2079, 2096 (2009) (Stevens, J., dissenting).

641

¶ 37.   The Court first concluded that not requiring the invocation of the right to counsel by a defendant in order to trigger the *Jackson* presumption, while consistent with the holding in *Jackson*, was unworkable in the many states that appoint counsel to indigent defendants without requiring an express request. *Id.* at 2088. Based in part on its determination that *Jackson* was unworkable, and that the protections the Court believed that *Jackson* provided were already afforded by *Edwards* for defendants who personally had retained and received the services of a lawyer for the crimes charged, the Court eliminated the presumptive rule of *Jackson*. *Id.* at 2091.

¶ 38.   The Court did not change the rule of law set out in *Massiah* that holds that a charged defendant who has secured and received representation of counsel for the pending charges has invoked his Sixth Amendment right to counsel, thereby preventing the subsequent eliciting of statements by the defendant without the presence of counsel. *Massiah,* 377 U.S. at 206 (concluding that Massiah was denied the "basic protections of [the Sixth Amendment right to counsel] when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel.") The Court also reaffirmed the proscription of police badgering a defendant to change his mind about his invocation of the right to counsel made before police questioning began. *Montejo,* 556 U.S. at ___, 129 S. Ct. at 2085–87.

¶ 39.   Here, Forbush invoked his Sixth Amendment right to counsel while in custody in Michigan. He contacted Attorney Forbush and requested that Attorney Forbush represent him with regard to pending

charges, and Attorney Forbush did so. The Sixth Amendment's objective standard for determining whether the right to counsel was invoked is fully satisfied by Forbush appearing in Michigan with the attorney that he retained. *See Davis,* 512 U.S. at 459. There is nothing in the record to show that his invocation of the Sixth Amendment right to counsel was equivocal or that he did not request that Attorney Forbush assist him with the pending charges. That Forbush's first appearance with counsel was at an extradition hearing where he waived formal extradition proceedings does not diminish the fact that he was then a charged defendant and that the attorney who represented him was his brother, an attorney whom he retained. *Id.*; *Maust,* 576 N.E.2d at 971.

¶ 40.  In some respects, Forbush's circumstances are similar to those in *Massiah,* in that Massiah had appeared on pending charges with a lawyer and pleaded not guilty. *Massiah,* 377 U.S. at 201. When law enforcement succeeded in obtaining incriminating statements from him through an intermediary outside the presence of counsel, the Supreme Court held Massiah's statements inadmissible as violative of his Sixth Amendment right to counsel. *Id.* at 205–06. Here, Forbush's statements were made after he had invoked his Sixth Amendment right to counsel by his appearance in Michigan with an attorney when these charges were pending. The Sixth Amendment circumstances presented by the facts of this case are not the "certain circumstances" addressed in *Montejo* where there was no determination that Montejo had invoked his Sixth Amendment right to counsel.[15]

---

[15] Justice Crooks' dissent is based on the *unstated,* but faulty, premise that Forbush did not invoke his Sixth Amend-

## c. Wisconsin law

¶ 41.  In regard to the protections afforded defendants in criminal proceedings, one interpretation of Forbush's argument is that he is not asking us to create a new interpretation of Article I, Section 7 of the Wisconsin Constitution in order to expand its protections beyond those afforded by the Sixth Amendment of the United States Constitution. Rather, Forbush may be asking us to maintain our past interpretations of Article I, Section 7. In order to address this argument, I review past interpretations of Article I, Section 7 that we have applied in cases where an accused's right to counsel is at issue.

¶ 42.  Prior to *Montejo,* we held that "[t]he right to the assistance of counsel is necessary to ensure that a criminal defendant receives a fair trial. . . . A criminal defendant in Wisconsin is guaranteed this fundamental right to the assistance of counsel for his defense by both Article I, § 7 of the Wisconsin Constitution and the Sixth Amendment of the United States Constitution."

ment right to counsel by his appearance in Michigan with an attorney when these charges were pending. However, there is no reasonable view of the record before us under which one could conclude that Forbush by his unequivocal conduct did not then invoke his Sixth Amendment right to counsel for these charges. *See Massiah v. United States,* 377 U.S. 201, 201–02 (1964); *Davis v. United States,* 512 U.S. 452, 458–59 (1994); *Smith v. Illinois,* 469 U.S. 91, 97–98 (1984). He appeared in Michigan after he had been charged and he appeared with an attorney who is his brother. Scott Forbush was not an attorney selected by someone else. If the dissent were to admit that Forbush invoked his right to counsel, all of the dissent's arguments fall away. Accordingly, I understand why the dissent has not applied the objective test to the record before us, as is required by the Supreme Court; however, it is important for the reader to understand the tactic the dissent has chosen, as well.

*State v. Klessig,* 211 Wis. 2d 194, 201–02, 564 N.W.2d 716 (1997) (footnotes omitted). In *State v. Polak,* 2002 WI App 120, 254 Wis. 2d 585, 646 N.W.2d 845, the court of appeals explained that "[t]he scope, extent and interpretation of the right to assistance of counsel is identical under both the Wisconsin and the United States Constitutions." *Id.,* ¶ 8. Both *Klessig* and *Polak* arose after the defendants had asked for and were given the right of self-representation. However, the language that the courts used in reasoning through to their conclusions broadly described the parallel between the rights then guaranteed by the Sixth Amendment and those guaranteed by Article I, Section 7.

¶ 43.   In the context of an ineffective assistance of counsel claim, we also have concluded that Article I, Section 7's right to counsel is the same as what we then understood to have been provided by the Sixth Amendment. *Sanchez,* 201 Wis. 2d at 226. Furthermore, our previous interpretations of the right to counsel in Wisconsin are consistent with the constitutional history of Article I, Section 7 of the Wisconsin Constitution. Although, records from the Wisconsin constitutional conventions do not contain informative debate about the right to counsel in Article I, Section 7,[16] cases

---

[16] The Wisconsin Constitution was adopted in 1848. There were two constitutional conventions, one in 1846 and one in 1847–48. *State v. Hansford,* 219 Wis. 2d 226, 235 n.11, 580 N.W.2d 171 (1998). Review of the debates indicates that on January 22, 1848, the committee on revision and arrangement of the Declaration of Rights changed the Article I, Section 7 right to counsel from "the accused *hath a* right to be heard by himself and counsel" to "the accused *shall enjoy the* right to be heard by himself and counsel." Milo M. Quaife, The Attainment of Statehood 714 (1928). This is not instructive for our construction of Article I, Section 7.

645

decided near the time the Constitution was enacted are instructive. In 1859, in *Carpenter v. County of Dane,* we concluded that a prosecuting county was responsible for the cost of attorneys court-appointed to defend indigent defendants. *Carpenter v. Cnty. of Dane,* 9 Wis. 249, 250 (1859). We relied on Article I, Section 7, when we reasoned:

> It is true, we find no express provision of law declaring that the county shall pay for services rendered by an attorney appointed by the court, in defending a person on trial for a criminal offense; and yet, it would be a reproach upon the administration of justice, if a person, thus upon trial, could not have the assistance of legal counsel because he was too poor to secure it.

*Id.* at 250–51. We highlighted the significance of the right to counsel in Wisconsin:

> Now, is the right to meet the witnesses face to face, and to have compulsory process to compel the attendance of unwilling witnesses, more important, or more valuable to a person in [jeopardy] of life or liberty, than the privilege of having the benefit of the talents and assistance of counsel in examining the witnesses, or making his defense before the jury? And would it not be a little like mockery to secure to a pauper these solemn constitutional guaranties for a fair and full trial of the matters with which he was charged, and yet say to him when on trial, that he must employ his own counsel, who could alone render these guaranties of any real permanent value to him.

*Id.* at 251. We recognized the importance of having a robust right to counsel under Article I, Section 7, and that to be effective, this right must include the right to have the expense of counsel for indigent defendants covered by the State.

646

¶ 44. The import of the discussion of the right to counsel under Article I, Section 7 in *Carpenter* increases given that the opinion was authored by Justice Orsamus Cole. Justice Cole was the Grant County delegate to the 1848 constitutional convention.[17] Justice Cole, consequently, had considerable insight into the intent of the framers. *Cf. State v. Hansford,* 219 Wis. 2d 226, 238–39 (1998) (explaining that an 1852 case that held a right to a 12–person jury under the Wisconsin Constitution was "particularly significant" given that one of the justices on the unanimous court, although not the author of the opinion, was a delegate to the 1847–48 convention).

¶ 45. In addition to this early history of the right to counsel under Article I, Section 7, careful consideration of underlying constitutional policy supportive of this provision has led us to vigorously protect an accused's right to counsel. The above-cited language from early cases such as *Carpenter* demonstrates that the long-standing principles relating to the right to counsel are among the most important in protecting an accused. For example, *Carpenter* pointed out how it would be nothing short of "mockery" to afford the accused the right to compel and confront witnesses, while not providing counsel to assist him. *Carpenter,* 9 Wis. at 251. Moreover, in *County of Dane v. Smith,* 13 Wis. 654 (1861), we explained that the defendant and the prosecution are inherently adverse, and stated that it would be "unsafe and hazardous" for the accused to proceed without counsel. *Id.* at 656–57.

---

[17] Supreme Court Justices, Wisconsin Court System, http://wicourts.gov/about/judges/supreme/retired/cole.htm (last visited Apr. 18, 2011).

¶ 46. We repeatedly have expressed similar constitutional rationales relating to the issues presented today. First, regarding a defendant's right to the cessation of questioning once he has been formally charged and is represented by counsel, we explained, by comparing the differences in the wording of the Sixth Amendment and Fifth Amendment right to counsel, that:

> [t]he Sixth Amendment right to "Assistance of Counsel" is provided explicitly in the text of the Amendment and is designed to assist the "accused" with his or her "defence." The Fifth Amendment right to counsel is not expressly provided. It is a right that exists by implication, a prophylactic devised by courts to protect a person's right, in a criminal case, not to incriminate himself or herself involuntarily.

*Dagnall,* 236 Wis. 2d 339, ¶ 31. We explained that once the accused has requested and retained counsel, " 'a distinct set of constitutional safeguards aimed at preserving the sanctity of the attorney-client relationship takes effect.' " *Id.,* ¶ 49 (quoting *Patterson,* 487 U.S. at 290 n.3).

¶ 47. The constitutional policy underlying the *Dagnall* holding emphasizes that once a defendant moves from a "suspect" to an "accused," i.e., once a person has been formally charged, his or her right to counsel attaches. And in *Dagnall,* the defendant had affirmatively invoked his right to counsel by retaining and receiving the services of counsel. The strong constitutional protections under both the federal and state constitutions for an accused in the circumstances attendant to our *Dagnall* decision are logical given the competing interests at stake at that point in a prosecution. That is, the State seeks to obtain a confession from the accused while the accused has an interest in guard-

ing against the powers of the State that are focused on convicting him. Moreover, much of the State's investigation will be completed by the time the State formally charges a defendant, and therefore, protections for an accused do not unduly hinder the State's ability to investigate crimes.

¶ 48. In *Dagnall,* we also relied on the important policy rationale behind preserving the attorney-client relationship. This is a consideration separate and apart from other reasons for the principles we explained. Indeed, "the confidence and trust underlying the attorney-client relationship are foundational to the practice of law and deeply rooted in our law and Professional Rules." *Sands v. Menard, Inc.,* 2010 WI 96, ¶ 53, 328 Wis. 2d 647, 787 N.W.2d 384.

¶ 49. In *Sparkman v. State,* 27 Wis. 2d 92, 133 N.W.2d 776 (1965), we addressed whether a defendant had a right to appointed counsel at or prior to a preliminary hearing, as a matter of public policy. Sparkman claimed a violation of his right to counsel under the Fourteenth Amendment of the United States Constitution and Article I, Section 7 of the Wisconsin Constitution. *Id.* at 97. For a variety of reasons, we did not reach the constitutional questions presented. However, we concluded that counsel was required to be appointed for "compelling reasons," such as assisting in preserving the constitutional right to a fair trial, avoiding adverse psychological factors for the defendant, preparing and conducting the cross-examination of government witnesses and preserving testimony. *Id.* at 99–100. In so concluding, we said that the court's "power and duty were based on common law and supported by arguments from the various provisions of sec. 7, art. I." *Id.* at 98.

¶ 50. In *Dagnall* and many other cases cited above, we affirmed the rights that we concluded

charged defendants require for fair trials. I now conclude that the fundamental constitutional principles underlying those decisions are just as compelling today as we held them to be in the past. Therefore, they continue to be sound policy for Wisconsin that assures defendants fair trials.

¶ 51. In sum, I affirm the reasoning of *Dagnall* as controlling on the issue of the right to counsel for a defendant who has affirmatively invoked his right to counsel by requesting and receiving the services of counsel for pending charges. I agree with the State that *Montejo* did modify *Dagnall* such that there is no presumption of a Sixth Amendment violation due to police interrogation of a represented defendant when the "certain circumstances" of defendant match those of defendant-Montejo. I now apply these standards to the case at hand.

## C. Application

¶ 52. At the September 8, 2008 motion hearing, the parties stipulated that Forbush was represented by counsel at the time Norlander initiated questioning. This stipulation is consistent with *Massiah, Davis* and *Smith*. Stated otherwise, applying an objective standard to determine whether Forbush actually invoked his Sixth Amendment right to counsel by this representation to which the State has stipulated, requires the reasonable conclusion that he did invoke his right to counsel.[18]

---

[18] Justice Crooks' dissent asserts that the stipulation gives no support to the conclusion that Forbush invoked his right to counsel. Justice Crooks' dissent, ¶ 130. However, I conclude that the continuation of legal representation in Wisconsin that

¶ 53. The parties did not stipulate to whether Norlander knew Forbush was represented. However, the circuit court made a finding of fact that authorities knew Forbush had retained counsel. This finding is not clearly erroneous.[19]

¶ 54. In this regard, I reaffirm that authorities must not avoid discovering whether an accused has invoked his Sixth Amendment right to counsel. *Dagnall*, 236 Wis. 2d 339, ¶ 51. The circuit court concluded that, "In those circumstances where it's known that there has been an attorney and when it's been advised to the DA's Office that there is an attorney, I think it's incumbent on the officers doing the interview to at least ask if there is an attorney representing that defendant. And that wasn't done."

¶ 55. I agree with the circuit court's reasoning. Under the undisputed facts herein presented, Forbush affirmatively invoked his Sixth Amendment and Article I, Section 7 rights to counsel by retaining and receiving the services of counsel for the crimes charged, and law enforcement was aware of that representation when Norlander began to question Forbush. Accordingly, Norlander's questioning violated Forbush's right to counsel afforded by the Sixth Amendment and Article I, Section 7 of the Wisconsin Constitution, from its inception; the circuit court's suppression of Forbush's statements to Norlander was required due to the violation of Forbush's constitutional rights. Nothing in *Montejo*

---

Forbush began by personally retaining an attorney in Michigan, leads to the reasonable conclusion that Forbush invoked his Sixth Amendment and Article I, Section 7 rights to counsel.

[19] Norlander testified that he had reviewed Detective Weber's report prior to questioning Forbush and Detective Weber had been in contact with Scott Forbush, Forbush's attorney.

disturbs *Edwards* absolute bar to questioning a defendant who has invoked his right to counsel. Accordingly, *Montejo* is not applicable to the constitutional analysis applicable after Forbush affirmatively invoked the Sixth Amendment right to counsel by retaining and receiving the services of an attorney.[20]

### III.   CONCLUSION

¶ 56.   I conclude that in the factual context herein presented, *Montejo* does not sanction the interrogation that occurred. I so conclude because Forbush's right to counsel under the federal or state constitution had attached and was invoked affirmatively by Forbush before the investigator's questioning was initiated. I also conclude that the circuit court's finding that the investigator knew Forbush had secured legal counsel for the pending charges is not clearly erroneous. Furthermore, Forbush was not required to "re-invoke" his right to counsel when the investigator initiated interrogation. Accordingly, we reverse the decision of the court of appeals and affirm the suppression order of the circuit court.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.

¶ 57. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). Because Justice Roggensack's opinion appears as

[20] The reader should note that this is not a waiver case, i.e., the question presented is not whether Forbush waived his right to counsel during Norlander's interrogation. This is an invocation case, i.e., the question presented is whether Forbush invoked his Sixth Amendment and Article I, Section 7 rights to counsel.

the first opinion in print and electronic publications and inconsistently employs the words "we" and "us" (incorrectly in many instances, inasmuch as no justice is joining her opinion), it is important to clarify the precedential value of Justice Roggensack's opinion. It has none. *See* Justice Roggensack's op., ¶ 2, n.3 (explaining that four justices agree to reverse the decision of the court of appeals, although they do not agree on the rationale).

¶ 58. I agree to some extent with the writings of both Justice Roggensack and Justice Crooks. I agree with Justice Roggensack's bottom line that Forbush's right to counsel was violated and that Forbush's statements must be suppressed. I agree with Justice Crooks's criticism of Justice Roggensack's reasoning regarding Wisconsin law and *Montejo v. Louisiana,* 556 U.S. ___, 129 S. Ct. 2079 (2009).[1] Justice Roggensack does not forthrightly rest her decision on the Wisconsin

---

[1] Justice Roggensack, in an obfuscated attempt to avoid interpreting the Wisconsin Constitution, rests on an interpretation of *Montejo v. Louisiana,* 556 U.S. ___, 129 S. Ct. 2079 (2009). I agree with Justice Crooks that her interpretation lacks foundation in the text of the decision.

I further agree with Justice Crooks's dissent that a determination of an accused's constitutional rights is tethered to the text of a constitution, not to "fundamental constitutional principles" or "sound policy" as Justice Roggensack asserts in ¶¶ 44–49. There is neither support for, nor a need for, the concoction of constitutional principles and policy unmoored from the solemn constitutional guaranties the people of Wisconsin ensured for themselves. *See* Justice Roggensack's opinion, ¶¶ 44–49.

In avoiding interpreting the Wisconsin Constitution, Justice Roggensack rests on unmoored principles of public policy. It has been observed that public policy "is a very unruly horse, and once you get astride it you never know where it will carry you. It may lead you from sound law." *Richardson v. Mellish,* 130

Constitution. Instead, Justice Roggensack vacillates between resting on the Wisconsin Constitution, on constitutional interpretation in the case law, and nebulous concepts of "fundamental constitutional principles" and "sound policy" derived from the Wisconsin Constitution and our case law.[2]

¶ 59. I conclude that Forbush's right to counsel is appropriately tethered to the Wisconsin Constitution.

¶ 60. I conclude that Forbush's right to counsel is protected under Article I, Section 7 of the Wisconsin Constitution, which provides: "In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel . . . ."

¶ 61. This case must be understood in the light of two decisions—our decision in *State v. Dagnall,* 2000 WI 82, 236 Wis. 2d 339, 612 N.W.2d 680, and the United States Supreme Court's decision in *Montejo v. Louisiana,* 556 U.S. ___, 129 S. Ct. 2079 (2009)—and in light of Wisconsin constitutional law and constitutional history.

Eng. Rep. 294, 303 (1824). I heed that warning and avoid riding that unruly horse. Instead I base this concurrence on the Wisconsin Constitution and this Court's long-standing and cherished tradition of interpreting the Wisconsin Constitution to protect an accused's meaningful right to counsel to ensure the integrity of our system of justice.

Justice Roggensack's view that our court's interpretation of the federal Constitution in *State v. Dagnall,* 2000 WI 82, 236 Wis. 2d 339, 612 N.W.2d 680, is in reality an interpretation of the state constitution is erroneous, *see* Justice Crooks's dissent, ¶¶ 136–137, and contravenes the United States Supreme Court's doctrine of "adequate and independent state ground[s]." *Michigan v. Long,* 463 U.S. 1032, 1035, 1040 (1983).

[2] The interpretation of an accused's right to counsel under the Wisconsin Constitution is not based on sound policy or the common law unmoored from the constitutional guaranties the people of Wisconsin ensured for themselves through the Wisconsin constitution.

¶ 62. In *Dagnall,* this court interpreted the Sixth Amendment to the United States Constitution, not the Wisconsin Constitution. The *Dagnall* court suppressed a defendant's incriminating statements under the Sixth Amendment, concluding that a presumption existed that the defendant had invoked his right to counsel when (1) the defendant had been charged; (2) the defendant had counsel; and (3) law enforcement officers were aware that the defendant had counsel.[3] Both Forbush and the State agree that the well-established law enforcement practice in Wisconsin has been to refrain from interrogating charged and represented defendants

¶ 63. In *Montejo,* the United States Supreme Court overruled its prior decisions to conclude that the protections of the Sixth Amendment right to counsel are equivalent to the protections of an accused's Fifth Amendment right to counsel. The Court ruled in *Montejo* that a defendant who has been charged with a crime may waive his Sixth Amendment right to counsel so long as the relinquishment of the right is voluntary, knowing, and intelligent;[4] an equivocal request for counsel does not constitute a request for counsel under the Sixth Amendment.[5]

¶ 64. The United States Supreme Court's interpretation of the Sixth Amendment in *Montejo* supersedes our interpretation of the Sixth Amendment in *Dagnall* and our previous interpretations of the Sixth Amendment.[6] "[T]he Supremacy Clause of the United

---

[3] *State v. Dagnall,* 2000 WI 82, ¶¶ 52–53, 236 Wis. 2d 339, 612 N.W.2d 680.

[4] "The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled." *Montejo,* 129 S. Ct. at 2085.

[5] *Id.*

[6] *Montejo* also effectively overruled *State v. Hornung,* 229

States Constitution compels adherence to United States Supreme Court precedent on matters of federal law, although it means deviating from a conflicting decision of this court."[7]

¶ 65. Thus, Forbush concludes that he is foreclosed by the Sixth Amendment. He focuses on the Wisconsin Constitution. I too focus my analysis on the Wisconsin Constitution. The core issue Forbush presents in the instant case is whether Article I, Section 7 of the Wisconsin Constitution requires the suppression of the statements he made to Detective Norlander.[8]

Wis. 2d 469, 600 N.W.2d 264 (Ct. App. 1999), in which the court of appeals determined that strict requirements of "unequivocally and unambiguously" asserting the right to counsel, as determined under the Fifth Amendment, were not the appropriate requirements under the Sixth Amendment. The *Hornung* court, relying upon *Michigan v. Jackson,* 475 U.S. 625, 631–32 (1986), determined that greater leeway was afforded a charged defendant in asserting the right to counsel.

This court referred to the *Hornung* decision in *State v. Ward,* 2009 WI 60, ¶ 43 n.5, 318 Wis. 2d 301, 767 N.W.2d 236, in summing up Wisconsin precedent regarding a charged defendant's invocation of the right to counsel under the Sixth Amendment. In *Ward,* Justice Crooks, in dissent, lamented the artificial line-drawing between the protections of the Fifth and Sixth Amendments. I agree with Justice Crooks that the protections for the right of counsel should be same for the Fifth and Sixth Amendments. Unlike Justice Crooks, I would keep the stronger protections rather than drop down to the weaker protections. Nevertheless, the Supreme Court has interpreted the United States Constitution, and this court is bound by that determination.

[7] *See State v. Jennings,* 2002 WI 44, ¶ 3, 252 Wis. 2d 228, 647 N.W.2d 142.

[8] Forbush's Petition for Review at 2; Brief and Appendix of Defendant-Respondent-Petitioner at 1.

¶ 66. Forbush calls our attention to Justice Scalia's majority opinion in *Montejo,* inviting state courts to look to their own constitutions.[9] Justice Scalia wrote: "If a State *wishes* to abstain from requesting interviews with represented defendants when counsel is not present, it obviously may continue to do so."[10]

¶ 67. No invitation from the United States Supreme Court is necessary for a state court to abide by its own constitution. Wisconsin judges take an oath to support the Wisconsin Constitution. The long-standing tradition in this State is to protect the rights provided by the fundamental charter between Wisconsin and the people of this state.

¶ 68. State courts have, without question, the power to interpret their state constitutions differently than the United States Supreme Court has interpreted even parallel, analogous federal constitutional provisions.[11]

---

[9] Brief and Appendix of Defendant-Respondent-Petitioner at 23–24.

[10] *Montejo,* 129 S. Ct. at 2089 (emphasis in original).

[11] The United States Supreme Court has explicitly acknowledged this authority on numerous occasions, even going so far as offering invitations to state courts to do so on many occasions, just as Justice Scalia has in *Montejo. See, e.g., Montejo,* 129 S. Ct. at 2089 ("If a State *wishes* to abstain from requesting interviews with represented defendants when counsel is not present, it obviously may continue to do so" (emphasis in original).); *Oregon v. Hass,* 420 U.S. 714, 719 (1975) ("[A] State is free *as a matter of its own law* to impose greater restrictions on police activity than those this Court holds to be necessary upon federal constitutional standards" (emphasis in original).); *Oregon v. Mathiason,* 429 U.S. 492, 499 (1977) ("It is therefore important to note that the state courts remain free, in interpreting state constitutions, to guard against the evil clearly identified by this case.") (Marshall, J., dissenting); *Lego v. Twomey,* 404 U.S. 477, 489 (1972) ("Of course, the States are

¶ 69. It is axiomatic that a state's highest court is the final arbiter of the meaning of the state constitution, subject to the rule that a state may not infringe upon protections afforded by the federal constitution. Nearly fifty years ago our court explained that when interpreting our Constitution, decisions from the United States Supreme Court interpreting analogous provisions in the federal Constitution "are eminent and highly persuasive, but not controlling, authority . . . ."[12]

¶ 70. This court has explained that it "will not be bound by the minimums which are imposed by the Supreme Court of the United States if it is the judgment of this court that the Constitution of Wisconsin

___

free, pursuant to their own law, to adopt a higher standard."). For other authority stating the same proposition of law, see *State v. Knapp* (*Knapp II*), 2005 WI 127, ¶ 57, 285 Wis. 2d 86, 700 N.W.2d 899; *id.,* ¶¶ 85–86, (Crooks, J., concurring).

The Wisconsin Supreme Court has "a long history of recognizing the vitality of the Declaration of Rights of the Wisconsin Constitution . . . ." *State v. Pallone,* 2000 WI 77, ¶ 92, 236 Wis. 2d 162, 613 N.W.2d 568 (Abrahamson, C.J., dissenting). *See, e.g., Jokosh v. State,* 181 Wis. 160, 193 N.W. 976 (1923); *Hoyer v. State,* 180 Wis. 407, 193 N.W. 89 (1923); *State v. Knapp,* 2005 WI 127, 285 Wis. 2d 86, 700 N.W.2d 899; *see also* John Sundquist, *Construction of the Wisconsin Constitution—Recurrence to Fundamental Principles,* 62 Marq. L. Rev. 531 (1979); Eric Klumb, Comment, *The Independent Application of State Constitutional Provisions to Questions of Criminal Procedure,* 62 Marq. L. Rev. 596 (1979); Junaid H. Chida, Comment, *Rediscovering the Wisconsin Constitution: Presentation of Constitutional Questions to State Courts,* 1983 Wis. L. Rev. 483.

For a discussion of other state courts interpreting their own constitutions rather than viewing the state constitution as a restatement of the federal Constitution, see *Knapp II,* 285 Wis. 2d 86, ¶¶ 87–91 (Crooks, J., concurring).

[12] *McCauley v. Tropic of Cancer,* 20 Wis. 2d 134, 139, 121 N.W.2d 545 (1963).

and the laws of this state require that greater protection of citizens' liberties ought to be afforded."[13] Article I, Section 22 of the Wisconsin Constitution admonishes: "The blessings of a free government can only be maintained by a firm adherence to justice, moderation, temperance, frugality and virtue, and by frequent recurrence to fundamental principles."

¶ 71. Based on our long tradition, I accept Justice Scalia's invitation to interpret the protections afforded Forbush under the Wisconsin Constitution. I conclude that under the Wisconsin Constitution, an accused is afforded the protections this court previously described in *Dagnall*,[14] *Hornung*,[15] and *Ward*[16] to be attached to the Sixth Amendment. Applying the holding of *Dagnall* to the Wisconsin Constitution, I conclude that Forbush "was not required to invoke the right to counsel in this case because he had been formally charged with a crime and counsel had been retained to represent him on that charge."[17] My conclusion is grounded in Wisconsin's long history of protecting an accused's meaningful right to counsel, a history dating back well before the protections under the Sixth Amendment were extended to the people of this State.[18]

¶ 72. In reaching this conclusion I am following the course this court took in our recent decision in *State v. Knapp*, 2005 WI 127, 285 Wis. 2d 86, 700 N.W.2d 899.

---

[13] *State v. Doe*, 78 Wis. 2d 161, 172, 254 N.W.2d 210 (1977).

[14] *State v. Dagnall*, 2000 WI 82, 236 Wis. 2d 339, 612 N.W.2d 680.

[15] *Hornung v. Hornung*, 229 Wis. 2d 469, 477–80, 600 N.W.2d 264 (Ct. App. 1999).

[16] *State v. Ward*, 2009 WI 60, ¶ 43 n.5, 318 Wis. 2d 301, 767 N.W.2d 236.

[17] *Dagnall*, 236 Wis. 2d 339, ¶ 4.

[18] *Carpenter v. Dane County*, 9 Wis. 274 (1859).

The history of *Knapp* is analogous to the history of the present case. *Knapp* provides an example of this court's interpreting the Wisconsin Constitution to afford greater protection to our citizens' liberties than that provided under the federal constitution.

¶ 73.   In *State v. Knapp* (*Knapp I*), 2003 WI 121, 265 Wis. 2d 278, 666 N.W.2d 881, the court interpreted the Fifth Amendment of the federal Constitution. (In *Dagnall,* this court interpreted the Sixth Amendment.) The *Knapp I* court concluded that the fruit of the poisonous tree doctrine extended to derivative evidence discovered as a result of defendant's voluntary statements obtained without *Miranda* warnings.

¶ 74.   Thereafter, in *United States v. Patane,* 542 U.S. 630 (2004), the United States Supreme Court disagreed with our court's interpretation of the Fifth Amendment and concluded in a plurality opinion that the admission of such derivative evidence did not violate the Fifth Amendment.[19] The United States Supreme Court vacated the *Knapp I* decision and remanded the case to this court.[20] (In *Montejo* the Supreme Court disagreed with our court's interpretation of the Sixth Amendment in *Dagnall.*)

¶ 75.   On remand of *Knapp I,* this court had to decide in *Knapp II*[21] whether to follow the United States Supreme Court decision in *Patane* or stay with

---

[19] Justices Kennedy and O'Connor concurred in the judgment, agreeing with the plurality that admission of nontestimonial physical fruits does not run the risk of admitting into trial an accused's coerced incriminating statements against himself. *United States v. Patane,* 542 U.S. 630, 645 (2004).

[20] *Wisconsin v. Knapp,* 542 U.S. 952 (2004) (vacating this court's decision on Fifth Amendment grounds in *State v. Knapp* (*Knapp I*), 2003 WI 121, 265 Wis. 2d 278, 666 N.W.2d 881).

[21] *State v. Knapp* (*Knapp II*), 2005 WI 127, 285 Wis. 2d 86, 700 N.W.2d 899.

*Knapp I* and hold that the physical evidence obtained as the direct result of an intentional *Miranda* violation should be suppressed as a violation of Article I, Section 8 of the Wisconsin Constitution (the Fifth Amendment analogue).[22] (In the instant case, this court has to decide whether to follow the United States Supreme Court decision in *Montejo* or adhere to *Dagnall* as a matter of state constitutional law.)

¶ 76. The State argued in *Knapp II* that *Patane* was dispositive because neither did Knapp raise violations of, nor did this court base its decision in *Knapp II* on, our state constitution's analogue of the Fifth Amendment. Moreover, the State argued that this court had declined in previous cases to interpret the Wisconsin Constitution's right against self-incrimination in Article I, Section 8 (textually almost identical to that right in the Fifth Amendment) more broadly than the federal constitutional right.[23] (The State makes a similar argument in the instant case.)

¶ 77. On remand in *Knapp II,* relying upon Wisconsin's long and cherished history of providing robust protection for individual rights to preserve the integrity of our criminal justice system, this court held that the Wisconsin Constitution provides greater protections under Article I, Section 8 than are afforded under the analogous Fifth Amendment of the United States Constitution.[24] In the present case, I would follow the precedent set forth in *Knapp II* and apply the state constitution.

---

[22] Article I, Section 8 of the Wisconsin Constitution provides: "No person . . . may be compelled in any criminal case to be a witness against himself or herself."

[23] *State v. Jennings*, 2002 WI 44, ¶ 6, 252 Wis. 2d 228, 647 N.W.2d 142.

[24] *Knapp II,* 285 Wis. 2d 86, ¶¶ 79–83.

¶ 78.  Protecting an accused's right to counsel in pre-trial interrogation is imperative to protect the trial rights of an accused and to enhance the integrity of the fact-finding process.  As the United States Supreme Court recognized in *Miranda:* "Without the protections flowing from adequate warning and the rights of counsel, 'all the careful safeguards erected around the giving of testimony, whether by an accused or any other witness, would become empty formalities in a procedure where the most compelling possible evidence of guilt, a confession, would have already been obtained at the unsupervised pleasure of the police.' *Mapp v. Ohio,* 367 U.S. 643, 685 (1961) (Harlan, J., dissenting). *Cf. Pointer v. Texas,* 380 U.S. 400 (1965)."[25]

¶ 79.  I would interpret Article I, Section 7 of the Wisconsin Constitution following the reasoning and conclusions set forth in *Dagnall* and other Wisconsin cases interpreting a charged defendant's right to counsel. In doing so I carry forward our 1859 *Carpenter* decision[26] and this court's longstanding state constitutional law jurisprudence to protect an accused's meaningful right to counsel.

¶ 80.  For the reasons set forth, I conclude that the State violated Forbush's constitutional right to counsel under Article I, Section 7 of the Wisconsin Constitution. The circuit court properly suppressed his statements.

¶ 81.  I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

---

*See Knapp II,* 285 Wis. 2d 86, ¶ 2 (reinstating all portions of the prior *Knapp I* decision, 265 Wis. 2d 278, not implicated by the United States Supreme Court's order vacating the decision in light of *United States v. Patane,* 542 U.S. 630 (2004)).

[25] *Miranda v. Arizona,* 384 U.S. 436, 466 (1966) (parallel citations omitted).

[26] *Carpenter v. Doe,* 9 Wis. 274 (1859).

¶ 82. DAVID T. PROSSER, J. (*concurring*). In 2000 the Wisconsin Supreme Court interpreted the Sixth Amendment right to counsel in the following circumstances: (1) the defendant had been charged with a crime; (2) counsel had been retained to represent the accused on that charge; (3) counsel informed law enforcement authorities about the representation and admonished them not to question the accused about the charge; and (4) both the law enforcement officers involved and the accused knew of the representation and discussed it. In these circumstances, the law enforcement officers continued to question the accused, administering *Miranda* warnings[1] three times, then interrogating the accused about the charge. Each time they elicited incriminating information. The accused later attempted to suppress this information. *See State v. Dagnall*, 2000 WI 82, 236 Wis. 2d 339, 612 N.W.2d 680.

¶ 83. The *Dagnall* court did not determine whether the accused's statement to the officers—"My lawyer told me that I shouldn't talk to you guys"—was sufficient to "invoke" his Sixth Amendment right to counsel after he received a *Miranda* warning. *Id.*, ¶¶ 56–57. Rather, the court determined that the defendant was not required to "invoke" the right of counsel in the circumstances presented:

> We hold that Dagnall was not required to invoke the right to counsel in this case because he had been formally charged with a crime and counsel had been retained to represent him on that charge. Because Dagnall was an accused person under the Sixth Amendment who had an attorney to represent him on the specific crime charged, and because the attorney had informed the police of his representation of Dagnall and

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

admonished them not to question his client about that crime, any subsequent questioning about that crime was improper.

*Dagnall*, 236 Wis. 2d 339, ¶ 4.

¶ 84.   The court added in its conclusion:

We hold that the Sixth Amendment right to counsel protected Dagnall from police interrogation about the homicide once Dagnall was formally charged and once an attorney represented him on that charge. Because the detectives went to Florida knowing that counsel had been retained on the charge and because Attorney Connors had notified authorities that he represented Dagnall and did not want Dagnall questioned about the homicide, the detectives had no authority to question Dagnall about that crime.

*Id.*, ¶ 67.

¶ 85.   The *Dagnall* decision was this court's attempt to synthesize and explain United States Supreme Court decisions on the right to counsel, under the Sixth Amendment, as of mid-2000. The decision affirmed a unanimous decision of the court of appeals, *State v. Dagnall*, 228 Wis. 2d 495, 596 N.W.2d 482 (Ct. App. 1999), that concluded that Dagnall's "[m]y lawyer" statement to the officers—in the wake of Attorney James Connors' retention, notice of retention, and admonition to law enforcement—effectively invoked Dagnall's right to counsel. The court of appeals stated that right-to-counsel invocations by accused persons under the Sixth Amendment appeared to be afforded "greater leeway" than that given to "uncharged suspects (under the Fifth Amendment) during custodial questioning." *Id.* at 504–05.

¶ 86.   The *Dagnall* decision did not eliminate the need to invoke the right to counsel for "a charged

664

defendant in custody *who does not have counsel."* *Dagnall,* 236 Wis. 2d 339, ¶ 48 (emphasis added). The court said that the Sixth Amendment right to counsel "must be 'invoked' by the accused to terminate police questioning *before an attorney has been retained or appointed for those specific charges,"* provided that the accused has been properly informed of his right to have an attorney and his right not to answer questions. *Id.,* ¶ 52 (emphasis added).

¶ 87. But once a person has been charged and an attorney has been retained or appointed for that charge, "an accused who has [ ] counsel . . . need not make a 'real request' [an unambiguous invocation of the right to counsel] as required by the Fifth Amendment." *Id.,* ¶ 50.

¶ 88. These statements constitute the law of Wisconsin on and after July 6, 2000. They were the law of Wisconsin on May 16, 2008, when a detective for the Sheboygan County Sheriff's Department questioned Brad E. Forbush about the attempted sexual assault and false imprisonment charges filed against him eight days earlier.

¶ 89. On May 8, 2008, the Sheboygan County District Attorney's office had charged Forbush with two felonies and secured a warrant for his arrest. On that day, Forbush was arrested on the warrant in Michigan. He thereafter appeared at an extradition hearing in a Michigan court where he was represented by his brother, Scott Forbush, a Michigan attorney.

¶ 90. Forbush waived extradition and was transported to Wisconsin on May 15, 2008. The following morning he was questioned—after receiving a *Miranda* warning—by Detective Cory Norlander before his scheduled appearance in Sheboygan County Circuit Court.

¶ 91. There is no dispute that during the week between Forbush's arrest in Michigan and his return to

665

Wisconsin, someone close to Forbush retained the Mastantuono Law Office to represent Forbush on his Wisconsin charges and the Mastantuono Law Office immediately notified the Sheboygan County District Attorney's office of this representation. Attorney Rebecca Coffee of the Mastantuono Law Office was present for Forbush's 11 a.m. initial appearance in court on May 16.

¶ 92. In short, Forbush's Sixth Amendment right to counsel was triggered by the filing of a criminal complaint. Counsel was present for Forbush in Michigan, and counsel was retained for Forbush in Wisconsin. The District Attorney's office was promptly notified of Forbush's Wisconsin representation, and counsel for Forbush appeared timely for the first court hearing. There is simply no basis for disconnecting the facts of this case from the clear law established in *Dagnall* because under the law in *Dagnall*, Forbush was not required to personally, unambiguously, and unequivocally "invoke" his right to counsel when he spoke to Detective Norlander.

¶ 93. Accordingly, the detective's questioning was not proper. Any incriminating statements obtained from Forbush on the morning of May 16 should have been suppressed under then controlling Wisconsin law. The circuit court was correct when it applied this law and suppressed Forbush's statements on September 19, 2008.

## *MONTEJO* AND *GANT*

¶ 94. In 2009, while the State's appeal was pending in the court of appeals, the United States Supreme Court handed down two important criminal law deci-

sions: *Montejo v. Louisiana,* 556 U.S. __, 129 S. Ct. 2079 (2009), and *Arizona v. Gant,* 556 U.S. __, 129 S. Ct. 1710 (2009).

¶ 95.  In *Montejo,* the Supreme Court overruled its holding in *Michigan v. Jackson,* 475 U.S. 625, 636 (1986), that once the Sixth Amendment right to counsel is asserted, an accused may not validly waive that right in a police-initiated custodial interrogation. *Montejo,* 129 S. Ct. at 2091. The Court, in an opinion by Justice Scalia, conducted a cost-benefit analysis, ultimately concluding that the "three layers of prophylaxis" outlined by the Court's decisions in *Miranda v. Arizona,* 384 U.S. 436 (1966), *Edwards v. Arizona,* 451 U.S. 477 (1981), and *Minnick v. Mississippi,* 498 U.S. 146 (1990), were sufficient to protect the right to counsel under the Sixth Amendment. *Montejo,* 129 S. Ct. at 2090.

¶ 96.  In overruling *Jackson,* the Court undercut many of the major underpinnings of *Dagnall,* which relied heavily on *Jackson*'s reasoning. *See Dagnall,* 236 Wis. 2d 339, ¶¶ 42, 48. The *Montejo* Court held that where a defendant has been read his *Miranda* rights, is represented by counsel, and waives his rights, no presumption of invalidity attaches to the waiver. *Montejo,* 129 S. Ct. at 2085. As a practical matter, the Court's holding in *Montejo* constricted the rights of criminal defendants who have been charged with an offense and are represented on that offense.

¶ 97.  The Court implicitly recognized, however, that its changed interpretation of the Sixth Amendment right to counsel is not the only constitutionally acceptable approach. "If a State *wishes* to abstain from requesting interviews with represented defendants when counsel is not present, it obviously may continue to do so." *Montejo,* 129 S. Ct. at 2089. In making this statement, the Court not only acknowledged the viabil-

ity of other, more protective, procedures in the Sixth Amendment context but also belied any interpretation that its *Montejo* ruling must be applied retroactively.

¶ 98.   The second important criminal case in 2009 was *Arizona v. Gant.* In *Gant,* the Court narrowed the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement. By clarifying and narrowing the holding in *New York v. Belton,* 453 U.S. 454 (1981), the Court limited police searches of the passenger compartments of motor vehicles to situations in which the persons arrested are unsecured and within reaching distance of the compartments at the time of the search. *Gant,* 129 S. Ct. at 1719.

¶ 99.   Many courts, including courts in Wisconsin, had interpreted *Belton* expansively, *see, e.g., State v. Fry,* 131 Wis. 2d 153, 388 N.W.2d 565 (1986), and law enforcement officers had relied on these rulings in conducting certain automobile searches incident to arrest.

¶ 100.   When this court was confronted with the holding in *Gant,* we immediately accepted the *Gant* interpretation as controlling for future searches but declined to apply the remedy of exclusion retroactively to searches conducted prior to *Gant. See State v. Dearborn,* 2010 WI 84, ¶¶ 3–4, 327 Wis. 2d 252, 786 N.W.2d 97; *State v. Littlejohn,* 2010 WI 85, ¶ 5, 327 Wis. 2d 107, 786 N.W.2d 123. We recognized that the search conducted by the officers in *Dearborn* was clearly lawful at the time,[2] and occurred in reasonable reliance on existing Wisconsin precedent. *Id.,* ¶ 28.

---

[2] The search in question occurred on April 9, 2006. *State v. Dearborn,* 2010 WI 84, ¶ 5, 327 Wis. 2d 252, 786 N.W.2d 97. *Arizona v. Gant* was argued on October 7, 2008, and decided on April 21, 2009.

¶ 101. Because there was no question that the officers were acting in good faith, we applied the good faith exception to the exclusionary rule and declined to apply the remedy of exclusion. *Id.*, ¶ 49. We noted that in this context, where officers act in objectively reasonable reliance on settled precedent later deemed unconstitutional, the deterrent benefit of excluding the evidence seized would be nonexistent. *Id.*

¶ 102. In many ways, the Forbush case presents the opposite of the good faith reliance exemplified in *Dearborn*. When Forbush was questioned on the morning of May 16, 2008, he had been charged with two crimes and was represented by counsel. The law of Wisconsin did not require Forbush to "invoke" his right to counsel under these circumstances. Rather, it precluded law enforcement officers from initiating questions to the accused about these crimes. The law in Wisconsin was not ambiguous. The Department of Justice's own training materials clearly stated that, under *Dagnall,* a represented defendant charged with a crime need not invoke his Sixth Amendment right to counsel to prevent police questioning. Wisconsin Department of Justice, Training and Standards Bureau, *The Miranda Primer: A Handbook for Law Enforcement* (2004). In a publication written specifically for law enforcement, the Department of Justice instructed:

> [I]f a suspect who has been charged responds to the Miranda warning by making references to an attorney even though she does not clearly express a wish for counsel, this would likely be considered an assertion of the 6th amendment right. . . . The court jealously protects the 6th amendment right to counsel.

*The Miranda Primer,* 9 (*citing Dagnall,* 236 Wis. 2d 339).

¶ 103. At the time of Forbush's interrogation, the advent of the *Montejo* ruling was barely a glimmer in Justice Scalia's eye. The Supreme Court would not grant certiorari in *Montejo* until almost five months later (October 1, 2008), *Montejo v. Louisiana*, 129 S. Ct. 30 (2008), and it would not render a decision until May 26, 2009. It is therefore impossible to contend, as did the officers in *Dearborn*, that they acted in good faith reliance on existing law.

¶ 104. Law enforcement should not be disadvantaged for its "objectively reasonable reliance" on settled law. *Dearborn*, 327 Wis. 2d 252, ¶ 44. When officers follow "the clear and settled precedent of this court," they are doing what officers *should* do. *Id.* Applying the exclusionary rule to these officers simply because the "settled" law is subsequently changed would not deter misconduct. Conversely, law enforcement should not be rewarded for disregarding settled law in anticipation that someday it may be overruled. Evidence obtained in clear violation of the constitutional principles announced by this court should be suppressed.

¶ 105. The good faith exception to the exclusionary rule evolved from a recognition that where law enforcement acts in good faith, the purpose of deterrence is not served by suppressing reliable evidence. *Illinois v. Krull*, 480 U.S. 340, 349–50 (1987). The corollary to rewarding good faith is sanctioning bad faith. Applying the exclusionary rule and suppressing evidence where law enforcement has not complied with constitutional law promotes deterrence. While this court concluded that deterrence was not served by the retroactive application of *Gant*, it is served here. Ordinarily, law enforcement must comply with existing law, even though that law is later changed.

## FUTURE CASES

¶ 106. The principles stated above should determine the outcome of this case and may affect other cases where law enforcement officers conducted inappropriate questioning of accused defendants before *Montejo* was decided. The principles stated above do not address the future. It is, however, important to note that the Supreme Court invited the states to preserve existing law that police-initiated questioning of accused persons charged with crimes and represented by counsel is presumed invalid and will lead to exclusion of incriminating evidence.

¶ 107. The Wisconsin Department of Justice was correct when it stated that this court "jealously protects the 6th amendment right to counsel." *The Miranda Primer,* 9. As we indicated in *Dagnall,* the Sixth Amendment right to counsel arises after adversary judicial proceedings have been initiated by the filing of a criminal complaint or the issuance of an arrest warrant, *Dagnall,* 236 Wis. 2d 339, ¶ 30, and it includes pretrial interrogations after either of these events has occurred, *id.*

¶ 108. Interpreting the cases in 2000, this court said that "a charged defendant in custody who does not have counsel must invoke, assert, or exercise the right to counsel to prevent interrogation." *Id.*, ¶ 48.

¶ 109. The upshot of *Montejo* is that a charged defendant in custody must invoke, assert, or exercise the right to counsel, clearly, to prevent interrogation, even after counsel has been hired or appointed, so long as a proper *Miranda* warning has been provided.

¶ 110. Justice Scalia acknowledged in *Montejo* that a "bright-line rule like that adopted in *Jackson* ensures that no fruits of interrogations made possible

671

by badgering-induced involuntary waivers are ever erroneously admitted at trial." *Montejo,* 129 S. Ct. at 2089. But he discounted the value of such a rule, writing:

> [T]he Court has already taken substantial other, overlapping measures toward the same end. Under *Miranda*'s prophylactic protection of the right against compelled self-incrimination, any suspect subject to custodial interrogation has the right to have a lawyer present if he so requests, and to be advised of that right. Under *Edwards'* prophylactic protection of the *Miranda* right, once such a defendant "has invoked his right to have counsel present," interrogation must stop. And under *Minnick*'s prophylactic protection of the *Edwards* right, no subsequent interrogation may take place until counsel is present, "whether or not the accused has consulted with his attorney."

*Id.* at 2089–90 (citations omitted).

¶ 111. According to Justice Scalia, "a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the *Miranda* warnings." *Id.* at 2090.

¶ 112. This blueprint for interrogation will inevitably raise questions about whether a particular accused's statements "say as much" as necessary to terminate interrogation in the absence of counsel. It raises questions about whether an attorney present at the jail and demanding to see her client will be permitted to confer with the accused unless the accused personally asks to confer with his attorney.

¶ 113. An accused's waiver of counsel *must* be knowing *and* intelligent *and* voluntary, and the state will have the burden of showing all three in every case. This is significant when we acknowledge that not all

defendants are equal in their capacity to understand and appreciate their rights, and not all post-*Miranda* admissions will automatically pass muster.

¶ 114. Whether rights afforded by the Sixth Amendment will require additional protection in this state remains to be determined.

¶ 115. The law is ever changing. At first glance, *Montejo* presents a dramatic shift in direction for Sixth Amendment jurisprudence. If there is anything to be learned from a study of constitutional law, however, it is that even the most momentous decisions rarely escape some refinement over time. The Court's holding in *Belton* was perceived to be very broad when it was issued, but the decision was not clarified and narrowed until almost 30 years later. *Gant,* 129 S. Ct. at 1718–19.

¶ 116. *Montejo* is unquestionably the current controlling law on the subject of the Sixth Amendment right to counsel. But neither this court nor law enforcement currently has the benefit of the inevitable explanation, application, and modification of the principles that *Montejo* so recently announced. It is unnecessary here to expound on what additional protections, if any, may be needed in the future. It is enough now to uphold the protections that were in place when Brad Forbush was questioned in violation of settled law.

¶ 117. For the foregoing reasons, I respectfully concur.

¶ 118. N. PATRICK CROOKS, J. (*dissenting*). I lament the fact that three justices, each in a separate written opinion, take three divergent avenues in a futile effort to uphold the *Dagnall* rule and suppress statements Forbush voluntarily made to police. These varying approaches leave more questions than answers. Justice Roggensack, in her effort to save the *Dagnall*

rule, employs an extremely narrow reading of *Montejo,* ignoring an entire section of that decision, in order to extract only the language and principles that support her position. Her attempt to minimize the effect of a United States Supreme Court decision rings hollow because *Montejo* clarified that the focus on retained versus appointed counsel is a distinction without a difference. After *Montejo,* retaining or appointing counsel does not, by itself, serve to invoke the Sixth Amendment right to counsel prohibiting a subsequent police-initiated interrogation. Both Justice Prosser and Chief Justice Abrahamson note as much in their writings. Justice Prosser, in his effort to save the *Dagnall* rule, invents an anomalous bad faith corollary to the good faith exception to the exclusionary rule. Chief Justice Abrahamson, in her effort to save the *Dagnall* rule, relies on the Wisconsin Constitution but pays scant attention to the fact that *Dagnall* was based entirely on the United States Constitution. I would follow the clear mandate in *Montejo* and overrule *Dagnall.* This result follows the letter and the spirit of *Montejo,* protecting a defendant's right to counsel while ensuring that justice will be done by the admission of voluntary statements of a defendant such as Forbush.

¶ 119.   I disagree with the decisions of these justices to depart from well-reasoned federal constitutional law, and thus I respectfully dissent. Part I analyzes the United States Supreme Court's decision in *Montejo v. Louisiana,* 556 U.S. __, 129 S. Ct. 2079 (2009). Part II explains the effect of *Montejo* on the Sixth Amendment right to counsel and the law in Wisconsin. In Part III, I note, as I did in my dissent in *State v. Dagnall,* 2000 WI 82, 236 Wis. 2d 339, 612 N.W.2d 680, that the concerns echoed by the United States Supreme Court in *Montejo* and the lack of legal

674

support for distinguishing between the Fifth and Sixth Amendment rights to counsel strongly support following the United States Supreme Court's approach in *Montejo*. Part IV briefly concludes my dissent.

I.

¶ 120.  I begin by clarifying the effect of *Montejo* to demonstrate that Justice Roggensack's interpretation lacks any foundation in the language of that decision. Her opinion gives far too little credence to the United States Supreme Court's careful examination of the Sixth Amendment right to counsel and the rationale underlying the *Jackson* rule. *Montejo*'s clear and emphatic rejection of the *Jackson* rule effectively overrules *Dagnall,* as the court of appeals appropriately concluded. *State v. Forbush,* 2010 WI App 11, ¶ 13, 323 Wis. 2d 258, 779 N.W.2d 476. *Montejo* also clarified that only a clear, unequivocal request for counsel will invoke the Sixth Amendment right to counsel.[1]

¶ 121.  Under *Jackson,* a waiver of the right to counsel was presumed invalid where it was obtained during police-initiated questioning after the State was notified that a charged defendant had secured representation by counsel. *Montejo,* 129 S. Ct. at 2083. In *Jackson*, the defendant affirmatively requested the appointment of counsel. *Michigan v. Jackson*, 475 U.S. 625, 627 (1986). The *Montejo* Court explicitly overruled

---

[1] The central focus of *Montejo* was "the scope and continued viability of the rule announced by [the United States Supreme Court] in *Michigan v. Jackson*. *Montejo v. Louisiana*, 556 U.S. __, 129 S. Ct. 2079, 2082 (2009). After overruling *Jackson*, the Court also clarified that upon remand, Montejo could establish a violation of his Sixth Amendment right to counsel only if he proved that he *clearly and unequivocally requested counsel* when the officers approached him. *Id.* at 2091–92.

*Jackson,* concluding that it produced an unworkable, "fact-intensive and burdensome" rule for law enforcement and courts. *Montejo,* 129 S. Ct. at 2084.

¶ 122.   The *Montejo* Court's holding encompassed two distinct but related Sixth Amendment right to counsel issues. The Court first rejected Montejo's attempt to expand *Jackson* to allow the mere appointment of counsel, without any request by the defendant, to serve as an invocation of the Sixth Amendment right to counsel. *Id.* at 2083–88. Going a step further, the Court overruled *Jackson* outright. *Id.* at 2088–91.

¶ 123.   In rejecting the expansion of *Jackson* to the facts in *Montejo,* the United States Supreme Court noted that the only rationale for the *Jackson* rule was protection from police badgering. *Id.* at 2085–86. When a defendant has not actually requested the assistance of an attorney during custodial interrogation, the Court concluded that it was and is wholly unnecessary to place these constraints on law enforcement. The Court explained:

> No reason exists to assume that a defendant like Montejo, who has done *nothing at all* to express his intentions with respect to his Sixth Amendment rights, would not be perfectly amenable to speaking with the police without having counsel present. And no reason exists to prohibit the police from inquiring. *Edwards* and *Jackson* are meant to prevent police from badgering defendants into changing their minds about their rights, but a defendant who never asked for counsel has not yet made up his mind in the first instance.

*Id.* at 2086–87.

¶ 124.   The United States Supreme Court then put the entire *Jackson* rule in its sights. After weighing the costs and benefits of the *Jackson* rule, the Court concluded that *Jackson* lacked compelling reasoning.

*Id.* at 2089–91. The Court highlighted the absurdity of protecting a defendant from his own election to talk to law enforcement without counsel when other safeguards ensure that such a decision is knowing and voluntary. *Id.* at 2089–90. Little additional protection is gained from the *Jackson* rule considering the many prophylactic layers that exist to prevent police from obtaining involuntary or coerced statements.[2] *Id.* The cost of the *Jackson* rule, on the other hand, is substantial, given that it could often be used to invalidate an entirely voluntary confession and may deter law enforcement from even trying to obtain confessions. *Id.* at 2090–91. Ultimately, the Court overruled *Jackson*, holding that its limited benefit to constitutional protections came at too great a cost. *Id.* at 2091.

¶ 125.  *Montejo* also clarified that an unequivocal request for counsel is required to invoke both the Fifth and Sixth Amendment right to counsel.[3] The United

---

[2] The *Montejo* Court elaborated that there are three key layers of protection which adequately shield a defendant from an involuntary confession. 129 S. Ct. at 2089–90. *Miranda v. Arizona,* 384 U.S. 436, 474 (1966), prevents compelled self-incrimination by providing defendants with a number of rights in custodial interrogations, including the right to have an attorney present and the right to be notified of that right. *Edwards v. Arizona,* 451 U.S. 477, 484–85 (1981), ensures that law enforcement respects the *Miranda* right by prohibiting further interrogation after a defendant invokes the right to counsel. In a similar vein, *Minnick v. Mississippi,* 498 U.S. 146, 153 (1990), adds to the protection provided by *Edwards* by prohibiting any interrogation outside the presence of counsel once a defendant has invoked the right to counsel.

[3] Justice Roggensack's failure to address Forbush's argument that he equivocally requested counsel and that such a request is sufficient to invoke the right to counsel implicitly recognizes that this argument lacks merit after *Montejo*. Chief

States Supreme Court has long required an unequivocal and unambiguous request to invoke the Fifth Amendment right to counsel. *Davis v. U.S.*, 512 U.S. 452, 459 (1994). Prior to *Montejo,* the Court had not directly addressed the clarity with which a defendant was required to request counsel to invoke the Sixth Amendment right. However, the Court did not state that any different standard applied to post-charging interrogations either. While only the Fifth Amendment right to counsel was implicated in *Davis,* nothing in that case indicated that the standard was applicable only to pre-charging interrogations, and its reasoning is equally applicable to interrogations after a defendant has been charged. *Id.* at 458–62.

¶ 126.   In *Montejo,* after rejecting his argument under the now-defunct *Jackson* decision, the United States Supreme Court ordered a remand to allow Montejo to argue that he "made a clear assertion of the right to counsel," which under *Edwards* would invalidate any statements obtained after such an invocation if police initiated the subsequent interrogation. *Montejo,* 129 S. Ct. at 2091–92 (citing *Davis,* 512 U.S. at 459). The Court noted that "[e]ven if Montejo subsequently agreed to waive his rights, that waiver would have been invalid had it followed an 'unequivocal election of the right.' " *Id.* at 2091 (quoting *Texas v. Cobb,* 532 U.S. 162, 176 (2001)).

¶ 127.   At one time, the Wisconsin court of appeals had suggested "that the strict requirements for 'un-

Justice Abrahamson's opinion recognizes that *Montejo* clarified that a clear, unequivocal request for counsel is required to invoke both the Fifth and Sixth Amendment right to counsel, though she concludes that equivocal requests are sufficient to invoke the right to counsel under the Wisconsin Constitution. Chief Justice Abrahamson's op., ¶¶ 64 n.6, 71.

equivocally and unambiguously' asserting one's right to counsel under the Fifth Amendment are somewhat less stringent under the Sixth Amendment." *State v. Hornung,* 229 Wis. 2d 469, 478–80, 600 N.W.2d 264 (Ct. App. 1999) (relying on distinctions between the Fifth and Sixth Amendment right to counsel in *Jackson*). This court extended that statement in a footnote in *State v. Ward,* even though the Sixth Amendment was not at issue in that case, by noting that "in contrast to the Fifth Amendment right to counsel, an equivocal request for counsel in a Sixth Amendment context is sufficient to invoke that right." *State v. Ward,* 2009 WI 60, ¶ 43 n.5, 318 Wis. 2d 301, 767 N.W.2d 236 (citing *Hornung,* 229 Wis. 2d at 477–78 and *Patterson v. Illinois,* 487 U.S. 285, 290–91 (1988), and similarly relying on such distinctions). The United States Supreme Court has now erased the distinctions between pre- and post-charging interrogations in *Montejo* and clarified that an unequivocal request is required to invoke the right to counsel under both Amendments. The *Ward* footnote is now clearly in error.

¶ 128. Significantly, in its decision overruling *Jackson* and clarifying that only an unequivocal request can invoke the Sixth Amendment right to counsel, the United States Supreme Court disposed of the distinctions between the Fifth and Sixth Amendment right to counsel in *Montejo.* In support of its abrogation of the *Jackson* rule, the Court explained that "[s]ince the right under both sources is waived using the same procedure, doctrines ensuring voluntariness of the Fifth Amendment waiver simultaneously ensure the voluntariness of the Sixth Amendment waiver." *Montejo,* 129 S. Ct. at 2090 (internal citations omitted). Even more directly, the Court explicitly provided that "there is no reason categorically to distinguish an unrepresented defen-

dant (Fifth Amendment) from a represented one (Sixth Amendment)." *Id.* at 2092 (parentheticals added).

## II.

¶ 129.   I emphasize these tenets of *Montejo* because the United States Supreme Court's definitive interpretation of the Sixth Amendment right to counsel in *Montejo* clearly invalidates Justice Roggensack's reasoning for upholding *Dagnall* and provides the appropriate outcome in this case. The heart of Justice Roggensack's rationale is based on three erroneous legal arguments: (1) requesting counsel in out-of-state extradition proceedings invokes the right to counsel for a subsequent interrogation in Wisconsin, (2) *Montejo* is limited to its facts, and (3) *Dagnall* interpreted the Wisconsin Constitution or created constitutional principles severed from the Sixth Amendment. These assertions lack any legal support.

¶ 130.   There is also a fourth and quite critical factual flaw in Justice Roggensack's reasoning. Even if *Montejo* and *Dagnall* could be reconciled into a rule prohibiting the police-initiated interrogation of a charged defendant "who has affirmatively invoked his right to counsel by securing the services of an attorney for the crimes charged," Justice Roggensack's op., ¶ 27, there is no evidence that Forbush in fact did so in this case. While Forbush secured a Michigan attorney as counsel for his extradition hearing, there is no evidence that he secured counsel in Wisconsin or even knew that he was represented by counsel when the interrogation took place in Wisconsin. Justice Roggensack makes much of the parties' stipulation that Forbush was represented by counsel when interrogated by Detective Norlander and the circuit court's finding that Norlander knew of that representation. Justice Roggensack's op.,

680

¶¶ 52–53. *Montejo* rejected the idea that retaining counsel was sufficient to invoke the Sixth Amendment right to counsel. Justice Roggensack asserts that the *Dagnall* rule that survives *Montejo* applies to a defendant who affirmatively requests counsel, but the record does not support a conclusion that Forbush did so. More than conflicting with *Montejo*, allowing the retention of counsel by a family member or other person to invoke a defendant's right to counsel is contrary to this court's statement in *Ward* that only the defendant can invoke his right to counsel. *Ward*, 318 Wis. 2d 301, ¶ 38. There is nothing in the record to show that Forbush, himself, "affirmatively invoked his right to counsel by securing the services of an attorney for the crimes charged" in Wisconsin. Thus, Justice Roggensack's opinion is unveiled as nothing more than an endeavor to salvage *Dagnall*.

¶ 131.   Despite the lack of evidence in the record that Forbush affirmatively requested counsel in Wisconsin, Justice Roggensack makes the novel assertion that Forbush's retention of counsel for his extradition hearing in Michigan invoked his Sixth Amendment right to counsel for these Wisconsin charges. Justice Roggensack's op., ¶¶ 26, 39–40. Justice Roggensack provides no relevant support for this claim.[4] Indeed, as

---

[4] Justice Roggensack primarily relies on two decisions from other states, neither of which lend her any support. The Appellate Court of Illinois, relying on *Jackson*, since overruled in *Montejo*, held that police could not question a defendant who had requested counsel at an extradition hearing related to the crimes charged. *People v. Maust*, 576 N.E.2d 965, 971 (Ill. App. Ct. 1991). In a very different factual scenario in *State v. March*, No. M2007–53–CCA–R3–CD, 2011 WL 332327 (Tenn. Crim. App. Jan. 27, 2011), the defendant retained Tennessee counsel for the purposes of the pending criminal charges in Tennessee

was recently reaffirmed in *Montejo,* the United States Supreme Court has "in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation.' " *Montejo,* 129 S. Ct. at 2091 (quoting *McNeil v. Wisconsin,* 501 U.S. 171, 182 n.3 (1991)). No decision by this or any court provides that Forbush's assistance from Michigan counsel in a procedural, not substantive, extradition hearing in Michigan could serve to invoke his right to counsel for the purposes of an interrogation on criminal charges in Wisconsin.[5]

---

while still in California. However, this was not during or for the purposes of his extradition hearing. *Id.* at 19, 25. The court did, in passing, suggest that this invoked his Sixth Amendment right to counsel for the Tennessee charges, *id.* at 25; however, this conclusion was completely irrelevant to the court's ultimate decision that the defendant's Sixth Amendment rights were not violated because he initiated the conversation with police, *id.* at 27.

Justice Roggensack's reliance on several United States Supreme Court cases is similarly misplaced. Both *Davis* and *Smith v. Illinois* deal with the sufficiency of a request for counsel made during a custodial interrogation after being notified of the right to have an attorney present. *Davis,* 512 U.S. at 454–55, 459; *Smith v. Illinois,* 469 U.S. 91, 94–97 (1984). *Massiah v. United States,* 377 U.S. 201, 202–03, 206 (1964), did not involve a waiver at all, but rather the propriety of a clandestine interrogation by a third party without notice that the defendant was entitled to have an attorney present.

[5] The extradition hearing in an asylum state, in this case, Michigan, is distinct from any criminal proceedings that flow from the charges in the demanding state, in this case, Wisconsin. An extradition hearing, codified in the Michigan statutes at Mich. Comp. Laws § 780.14 (2009), follows the issuance of a fugitive compliant under § 780.12. *See also* Wis. Stat. § 976.03(13), (15) (2009–10). Pursuant to Mich. Comp. Laws § 780.12, the fugitive complaint must be on the oath of a

¶ 132. Additionally, it simply is not possible to read *Montejo* as narrowly as Justice Roggensack desires. Justice Roggensack insists that *Montejo* is limited to the "certain circumstances" presented in *Montejo,* which she vaguely asserts as "a charged defendant for whom counsel had been appointed by the court, but for whom the Supreme Court could not determine whether he had actually invoked his right to counsel and the protections that would then flow from *Edwards.*"[6] Jus-

credible person, must assert that the defendant committed a crime in another state, and must charge that the defendant has fled from justice. Then, at the extradition hearing, a judge in the asylum state determines whether "it appears that the person held is the person charged with having committed the crime alleged" and whether it appears "that he has fled from justice." § 780.14. At the extradition hearing, the defendant may exercise his right to waive further extradition proceedings and be willingly transported back to the demanding state.

In this case, Forbush secured his brother as counsel for his extradition hearing, waived extradition, and was willingly transported back to Wisconsin. As a practical matter, it is often the case that for purposes of representation at the extradition hearing, the court will have a public defender present or may appoint counsel, or, as was the case here, the defendant might wish to retain his own counsel. However, as the above statutory procedures make clear, a fugitive complaint and an extradition hearing are by no means a trial on the underlying charges in the demanding state. Accordingly, contrary to Justice Roggensack's suggestion, the fact that Forbush secured his brother as counsel for his extradition hearing in Michigan does not mean that Forbush affirmatively invoked his right to counsel for the crimes charged in Wisconsin.

[6] Justice Roggensack's opinion asserts that, as a result of *Montejo, Dagnall* no longer requires courts to *presume* that a waiver by a charged and represented defendant is invalid. This begs the question: What then is left of the *Dagnall* rule that Justice Roggensack strives so mightily to hold onto? Justice

tice Roggensack's op., ¶ 34 (citing *Montejo,* 129 S. Ct. at 2091–92). Justice Roggensack does not provide a single case from any court that has interpreted or limited *Montejo* in this way. I also found none. To the extent Justice Roggensack attempts to limit *Montejo* based on the Court's decision to remand to allow Montejo to make an argument that he "made a clear assertion of the right to counsel *when the officers approached him,*" that is merely a reference to the legal standard after *Montejo:* a defendant cannot "invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation.' "[7] *Montejo,* 129 S. Ct. at 2091 (quoting *McNeil,* 501 U.S. at 182 n.3) (emphasis added).

¶ 133.   Federal and state courts around the country have recognized that after *Montejo,* neither requesting nor being appointed nor receiving the services of counsel serves to invoke the Sixth Amendment right to counsel. *United States v. Johnson,* No. 09–752, 2010 WL 4910889, at *3–4 (E.D. Pa. Dec. 2, 2010); *United States v. Veals,* No. 08–2235, at 6, 2010 WL 145110, (7th Cir. Jan. 15, 2010); *People v. Vickery,* 229 P.3d 278, 281 (Colo. 2010); *Hughen v. State,* 297 S.W.3d 330, 335 (Tex. Crim.

---

Roggensack suggests that the *Dagnall* rule now means a defendant may invoke the Sixth Amendment right to counsel by "retaining and receiving the services of a lawyer" and need not "re-invoke" the right to counsel during custodial interrogation. Justice Roggensack's op., ¶ 35. Without the presumption, is there really anything meaningful left of the *Dagnall* holding?

[7] Justice Roggensack's reliance, in part, on *Montejo*'s approval of the *Edwards* rule, which protects defendants from police "badgering," is misguided. Justice Roggensack's op., ¶ 33. The Court addressed the anti-badgering rationale in the section overruling *Jackson,* concluding that it did not justify the *Jackson* rule because other prophylactic rules adequately protect against so-called police badgering. *Montejo,* 129 S. Ct. at 2089–90.

App. 2009); *Williams v. State,* 38 So. 3d 188, 190–92 (Fla. Dist. Ct. App. 2010). Commentators have also noted that *Montejo* foreclosed any rule allowing representation by or the retention of an attorney to serve as an invocation of the Sixth Amendment right to counsel. *Sixth Amendment—Right to Counsel—Interrogation Without Counsel Present,* 123 Harv. L. Rev. 182, 183 (2009) ("Justice Scalia held that neither of the two proposed approaches to *Jackson*—applying it only when the defendant affirmatively requests counsel or applying it as soon as the defendant is granted counsel even if there is no affirmative request—is workable."). The writings of Justice Prosser and Chief Justice Abrahamson both recognize that *Montejo* repudiated this court's interpretation of the Sixth Amendment right to counsel in *Dagnall.* Justice Prosser's op., ¶¶ 96, 109; Chief Justice Abrahamson's op., ¶ 64.

¶ 134. A closer look at the context of the Court's language in *Montejo* illuminates the fact that the "certain circumstances" are much broader, including both the facts of this case and the *Dagnall* rule. In summarizing the issue presented, the Court stated, "The *only* question raised by this case, and the only one addressed by the *Jackson* rule, is whether courts must *presume* that such a waiver is invalid under certain circumstances." *Montejo,* 129 S. Ct. at 2085. Thus, "certain circumstances" refers to those in Jackson, where the defendant had affirmatively requested counsel. *Jackson,* 475 U.S. at 627. It could not be more clear that the *Jackson* rule—upon the attachment of the Sixth Amendment right to counsel, a waiver is presumed invalid if obtained in a police-initiated interrogation by a defendant who has previously secured counsel for those charges—was what the Court categorically rejected in *Montejo. Montejo,* 129 S. Ct. at 2091.

¶ 135. The decision did not conclude upon the United States Supreme Court's explanation that the *Jackson* rule did not include a charged defendant who had "previously been appointed a lawyer." *Id.* at 2088. The Court proceeded to vitiate the *Jackson* rule and explained that it had "never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation.' " *Id.* at 2091 (quoting *McNeil,* 501 U.S. at 182 n.3). The Court could not have provided a more complete rejection of the Sixth Amendment interpretation espoused in Jackson, adopted by this court in *Dagnall,* and advanced in Justice Roggensack's opinion.[8]

¶ 136. *Dagnall's* holding "that the Sixth amendment right to counsel protected Dagnall from police interrogation . . . once Dagnall was formally charged and once an attorney represented him on that charge," directly conflicts with *Montejo* and thus should no longer be the law in Wisconsin. *Dagnall,* 236 Wis. 2d 339, ¶ 67; *see State v. Jennings,* 2002 WI 44, ¶ 3, 252 Wis. 2d 228, 647 N.W.2d 142 ("[T]he Supremacy Clause of the United States Constitution compels adherence to United States Supreme Court precedent on matters of

---

[8] Justice Roggensack's reliance on *Massiah,* 377 U.S. 201, is misplaced. Justice Roggensack's op., ¶¶ 38, 40. *Massiah* was not a waiver case; indeed, *Massiah* was never advised of his right to counsel at all. 377 U.S. at 202–03. In *Montejo,* after citing *Massiah* and several other tangentially related Sixth Amendment cases, the Court noted, "Since everyone agrees that absent a valid waiver, Montejo was entitled to a lawyer during the interrogation, those cases do not advance his argument." *Montejo,* 129 S. Ct. at 2088. *Massiah* is similarly unavailing on the precise issue here.

federal law, although it means deviating from a conflict-ing decision of this court.").[9]

¶ 137.   On a deeper level, *Montejo* rejected not only this court's holding in *Dagnall*, but also our reasoning in that case. *Dagnall*'s[10] departure from the more defined Fifth Amendment right to counsel standards was based, in part, on purported distinctions between the Fifth and Sixth Amendment rights to counsel. I dissented in *Dagnall* because there is no basis for deriving different standards from the Fifth and Sixth Amendment rights to counsel. 236 Wis. 2d 339, ¶¶ 74–76 (Crooks, J., dissenting). As explained above, the United States Supreme Court has now expressly rejected the premise that it is more difficult to waive the Sixth Amendment right to counsel than it is to waive the Fifth Amend-ment right. *Montejo,* 129 S. Ct. at 2090, 2092.

---

[9] I would also highlight that our decision in *Jennings* dealt with a conflict similar to the one presented in this case. That led us in *Jennings* to overrule conflicting Wisconsin precedent.

> Our decision in *Walkowiak* was tethered to the Fifth and Four-teenth Amendments and *Miranda/Edwards* jurisprudence up to that point. *Davis* was decided a month later. The following year, we acknowledged the conflict between *Walkowiak* and *Davis,* but did not explicitly overrule *Walkowiak.* We now do so.

*Jennings,* 252 Wis. 2d 228, ¶ 35 (internal citations omitted).

> *We should similarly overrule Dagnall, and clarify the con-flicting footnote in Ward, as both were "tethered" to now over-ruled United States Supreme Court precedent.*

[10] We should not lose sight of the fact that our decisions have real consequences. As a result of the majority's decision in *Dagnall,* his "statements detailing his involvement, with co-defendant Christopher E. Murray, in beating a man to death with baseball bats [was not] allowed in evidence. His conviction of first degree intentional homicide by use of a dangerous weapon, party to a crime, [was] set aside." *Dagnall,* 236 Wis. 2d 339, ¶ 70 (Crooks, J., dissenting).

687

¶ 138.  *Montejo* rejected this court's interpretation of the Sixth Amendment right to counsel in *Dagnall,* and it cannot survive without those Sixth Amendment underpinnings. We *explicitly* stated in *Dagnall* that our decision was based solely on the United States Supreme Court's interpretation of the Sixth Amendment right to counsel and *not* on any interpretation of the Wisconsin Constitution. In fact, the *Dagnall* majority referred to the Sixth Amendment 69 times and referred to the Wisconsin Constitution only in a footnote, which was added to make absolutely clear that our decision was *not* based on Article I, Section 7. 236 Wis. 2d 339, ¶ 28 n.7 (*"The State does not raise the issue whether Dagnall properly invoked his right to counsel under the state constitutional provision. Therefore, we do not address it."*) (emphasis added).

¶ 139.  While Justice Roggensack insists that *Montejo's* interpretation of the Sixth Amendment does not conflict with *Dagnall,* she nevertheless suggests that *Dagnall* created a "fundamental constitutional principle[]" underlying Article I, Section 7 that is unencumbered by Sixth Amendment jurisprudence. Justice Roggensack's op., ¶¶ 41–51. As noted in Justice Roggensack's opinion, ¶ 42, we have generally interpreted the right to counsel under Article I, Section 7 consistent with that in the Sixth Amendment. *See State v. Polak,* 2002 WI App 120, ¶ 8, 254 Wis. 2d 585, 646 N.W.2d 845; *State v. Sanchez,* 201 Wis. 2d 219, 226–27, 548 N.W.2d 69 (1996); *State v. Klessig,* 211 Wis. 2d 194, 202–03, 564 N.W.2d 716 (1997). In a convoluted inversion of that premise, Justice Roggensack essentially concludes that when we interpreted and applied the Sixth Amendment right to counsel in *Dagnall,* we created "fundamental constitutional principles" separate and independent from the federal constitution on

which they were based.[11] Justice Roggensack's op., ¶¶ 42, 50. This is a novel and unsupported interpretation. In both *Sanchez* and *Klessig,* our conclusion equating the right to counsel in Article I, Section 7 with that in the Sixth Amendment led us to adopt the United States Supreme Court's definitive interpretation of the Sixth Amendment right to counsel as the rule in Wisconsin. *Sanchez,* 201 Wis. 2d at 226–36; *Klessig,* 211 Wis. 2d at 201–03. Applying that rationale here should similarly lead Justices Roggensack and Prosser and Chief Justice Abrahamson to accept and follow the Court's interpretation of the Sixth Amendment in *Montejo.*

¶ 140. Justice Roggensack's reference to Wisconsin's historically vigorous protection of the right to counsel does not require a different result. Her writing correctly notes that Wisconsin has long protected a robust right to counsel but fails to provide a single case interpreting the right to counsel in Article I, Section 7 to provide the specific embellishments at issue in this case. Nor is there an explanation as to how the right to counsel, as interpreted by the United States Supreme Court in *Montejo,* is inconsistent with Wisconsin's commitment to protecting the right to counsel. Instead, Justice Roggensack rewrites our previous interpretations of the Sixth Amendment right to

---

[11] To the extent that Justice Roggensack's citation to *Sparkman v. State,* 27 Wis. 2d 92, 133 N.W.2d 776 (1965), and characterization of the *Dagnall* rule as a "fundamental constitutional principle[]" suggests that the rule she applies rests upon a constitutional common law, I note that there is no support for such a claim. *Sparkman*—a procedural, not constitutional right-to-counsel case—does not support the development of a constitutional common law rule detached from the constitution. *Id.* at 97–101.

counsel in *Dagnall* into a constitutional rule that is, inexplicably, independent of the constitutional provision from which it was derived.

¶ 141. Using another unique tactic to uphold the exclusion of Forbush's statements, Justice Prosser invents a bad faith corollary to the good faith exception to the exclusionary rule. We recently discussed the good faith exception in *State v. Dearborn,* 2010 WI 84, 327 Wis. 2d 252, 786 N.W.2d 97. We noted in *Dearborn* that the good faith exception was adopted from United States Supreme Court decisions and has been extensively developed through Fourth Amendment precedent. *Id.,* ¶¶ 33–43. Conversely, to my knowledge, this bad faith corollary has never been recognized by any other court, nor has the good faith exception ever before been applied in the Sixth amendment context.

¶ 142. Most importantly, Justice Prosser fails to heed our warning in *Dearborn* upon which our decision *not* to exclude critical evidence was based: deterrence should not be put ahead of the interest of justice. *Id.,* ¶ 36 ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.") (quoting *Herring v. United States,* 555 U.S. 135, 129 S. Ct. 695, 702 (2009)). It simply cannot be said in this case that Detective Norlander's conduct was so deliberate and culpable that exclusion is warranted when, in light of *Montejo,* there was no Sixth Amendment violation.

¶ 143. Taking further liberties with United States Supreme Court precedent, Justice Prosser suggests that because it is unclear how *Montejo,* "the current controlling law on the subject of the Sixth Amendment right to counsel," will be refined in the future, this court

can wait and see how the law develops before we decide whether to follow it. Justice Prosser's op., ¶¶ 115–16. This ignores the maxim that "this court is bound by the interpretations which the United States Supreme Court has given" to provisions of the federal constitution. *State v. Pitsch,* 124 Wis. 2d 628, 632, 369 N.W.2d 711 (1985). We may not elect whether to follow current constitutional law when applying the Sixth Amendment or defer until it develops into a rule we find more palatable.

¶ 144.   Two of our previous decisions illustrate the consequences of misinterpreting and misapplying United States Supreme Court precedent. In *State v. Ramos,* 211 Wis. 2d 12, 564 N.W.2d 328 (1997), I dissented, in part, because the majority misread *Ross v. Oklahoma,* 487 U.S. 81 (1988), to accord with its result. We noted as much in *State v. Lindell,* 2001 WI 108, 245 Wis. 2d 689, 629 N.W.2d 223, overruling *Ramos* because it was neither practically nor legally sound in light of the Court's decision in *United States v. Martinez-Salazar,* 528 U.S. 304 (2000), explicitly rejecting this court's reading of *Ross* in *Ramos. Lindell,* 245 Wis. 2d 689, ¶¶ 87–90, 131. Rather than waiting for the Court to explicitly reject Justice Roggensack's reading of *Montejo,* it would be wise to employ the only interpretation consistent with *Montejo's* reasoning: neither equivocally requesting, nor having appointed, nor receiving the services of an attorney invokes the right to counsel for the purposes of a custodial interrogation. It takes an unequivocal invocation of such right.

¶ 145.   To reach their desired result, Justices Roggensack and Prosser need not misapply our precedent and that of the United States Supreme Court, as they have done here, because, as we have done in certain unique circumstances, there are established

methods through which we may depart from federal constitutional rulings. For example, we may examine a parallel provision of the Wisconsin Constitution to determine whether it provides protections not afforded under the United States Constitution. *See e.g., State v. Hansford,* 219 Wis. 2d 226, 241–43, 580 N.W.2d 171 (1998) (holding that Article I, section 7 required a 12–person jury trial despite the United States Supreme Court's decision that the Sixth Amendment jury trial right did not) (citing *Williams v. Florida,* 399 U.S. 78 (1970)). However, I would note that there are limitations on this avenue, as there should be on any attempt to depart from federal constitutional standards. Any "upward departure from the federal constitutional standards adopted by the United States Supreme Court for purposes of our own state constitutional law must itself be grounded in requirements found in the state constitution or laws." *Jennings,* 252 Wis. 2d 228, ¶ 39 (citing *State v. Agnello,* 226 Wis. 2d 164, 180–181, 593 N.W.2d 427 (1999)); *see also State v. Doe,* 78 Wis. 2d 161, 172, 254 N.W.2d 210 (1977). Unfortunately, Justice Roggensack's and Justice Prosser's departures from the Court's definitive interpretation of the Sixth Amendment right to counsel in *Montejo* does not rest on any solid ground.

¶ 146.   Chief Justice Abrahamson's opinion follows the well-established method of examining whether the Wisconsin Constitution provides greater protections than the federal constitution. While I do not quibble with her approach, for the reasons set forth in this dissent, I strongly disagree with her result. I do not believe that there are any requirements in our Wisconsin Constitution or laws upon which an attempt to salvage the *Dagnall* rule may be founded.

¶ 147.   The *Dagnall* rule is without any legal footing after *Montejo.* This rule should not survive for

several practical reasons as well. In its decision rejecting the *Jackson* rule, based in part on a cost-benefit analysis of its practical application, the United States Supreme Court explained that it "deters law enforcement officers from even trying to obtain voluntary confessions." *Montejo,* 129 S. Ct. at 2091. Allowing equivocal requests for counsel to serve as an invocation of the right to counsel is similarly imprudent. As I noted previously, in *Davis,* when proclaiming the standard that only an unequivocal and unambiguous request can invoke the right to counsel, the Court noted that anything less "would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity." *Davis,* 512 U.S. at 460 (quoting *Michigan v. Mosley,* 423 U.S. 96, 102 (1975)). The amorphous concept of what constitutes an equivocal request for counsel provides almost no guidance to law enforcement officers and courts and thus is not a wise standard to impose.

¶ 148. As a result of the opinions of the three justices, statements Forbush made to police voluntarily after carefully considering whether to waive his right to counsel and tell his side of the story are held to be inadmissible. The justification for this result is unclear in light of the fact that, consistent with established Fifth Amendment law, had police questioned Forbush *before* charges were formally filed, his waiver would be valid and his statements would be admissible. However, since charges had been filed, they find his waiver invalid, even though if they followed the decision in *Montejo,* the waiver would be valid. Based on the clear holding of the United States Supreme Court in *Montejo,* I believe that there is no basis whatsoever for the rule set forth today.

693

¶ 149. Any interpretation of the right to counsel must strike a balance between protecting a defendant's rights and allowing law enforcement to seek justice. *See Montejo,* 129 S. Ct. at 2089. The other opinions clearly fail to strike such a balance.

¶ 150. For the above reasons, we should follow the United States Supreme Court and make it clear that *Dagnall* is no longer the law in Wisconsin. *Dagnall* relied solely on the Sixth Amendment to the federal constitution, and given the Court's clear decision in *Montejo,* I believe that the Supremacy Clause dictates this outcome. *See Jennings,* 252 Wis. 2d 228, ¶ 3. Justice Roggensack strives to salvage *Dagnall's* holding by restricting *Montejo* and attempting to convince the reader to believe that *Dagnall* created a rule unmoored to the Sixth Amendment. Despite this unsupported rationale, *Dagnall* cannot survive *Montejo.* Since *Montejo* also clarified that an unequivocal request for counsel is required to invoke both the Fifth and Sixth Amendment right to counsel, we should recognize that as the law in Wisconsin.

### III.

¶ 151. I believe it is also important to highlight that, in my dissent in *Dagnall,* I raised many of the same concerns addressed by the United States Supreme Court in its rejection of the *Jackson* rule in *Montejo.* One such concern is the limited support for applying different standards to the Fifth and Sixth Amendment rights to counsel. I dissented in *Dagnall* because "[i]n most significant respects, the Fifth and Sixth Amendments have been accorded similar treatment in regard to the right to counsel." 236 Wis. 2d 339, ¶ 74 (Crooks, J., dissenting). I further explained that the United States Supreme Court's decision in *Patterson,* 487 U.S.

285, "made it clear that while different policies are involved in the Fifth Amendment and Sixth Amendment right to counsel, one right is not superior to the other, and it is not more difficult to waive the Sixth Amendment right than the Fifth Amendment right." *Dagnall,* 236 Wis. 2d 339, ¶ 76. I also noted problems with such distinctions in practice. The "bright-line rule . . . prohibiting police interrogation where there has been an ambiguous or equivocal Sixth Amendment invocation, or no invocation at all by the accused, could be disastrous for law enforcement officials in Wisconsin." *Id.,* ¶ 84 (Crooks, J., dissenting). As discussed above, the United States Supreme Court agreed, noting that deterring law enforcement officers from trying to obtain confessions would seriously interfere with investigations. *Montejo,* 129 S. Ct. at 2090–91.

IV.

¶ 152. Therefore, I would affirm the court of appeals' decision and remand this case for trial. In so doing I would make it clear that *Dagnall* is no longer the law in Wisconsin and hold that the Sixth Amendment does not prohibit law enforcement from questioning a charged and represented defendant, assuming *Miranda* warnings and a knowing, voluntary, and intelligent waiver. I would also hold that a defendant may invoke the Sixth Amendment right to counsel only through an unambiguous and unequivocal request for the assistance of counsel.

¶ 153. I have emphasized in previous dissents and continue to emphasize here that when different rules apply to charged and uncharged defendants there may be a temptation to manipulate the timing of charging in a manner inconsistent with the interests of justice. Additionally, a bright-line rule prohibiting law enforce-

ment from initiating questioning with a charged and represented defendant will unduly restrict law enforcement's ability to obtain voluntary confessions. The result in this case comes at a serious cost. When law enforcement is prevented from obtaining voluntary confessions, "crimes go unsolved and criminals unpunished." *Montejo,* 129 S. Ct. at 2091.

¶ 154. For the reasons set forth herein, I respectfully dissent.

¶ 155. I am authorized to state that Justices ANNETTE KINGSLAND ZIEGLER and MICHAEL J. GABLEMAN join this dissent.

¶ 156. ANNETTE KINGSLAND ZIEGLER, J. (*dissenting*). I join Justice Crooks' dissent, but I write separately to emphasize my reason for joining his dissent.

¶ 157. For the past decade, the law in this state regarding custodial interrogation of represented defendants has been governed by *State v. Dagnall,* 2000 WI 82, 236 Wis. 2d 339, 612 N.W.2d 680. In *Dagnall,* this court concluded that the right to counsel under the Sixth Amendment of the United States Constitution protects a defendant from police interrogation once the defendant is formally charged and once the defendant is represented by counsel on that charge. *Id.,* ¶ 67. Nowhere in *Dagnall* did the court base its decision on Article I, Section 7 of the Wisconsin Constitution. *See id.,* ¶ 28 n.7. Had the *Dagnall* court so based its decision on the Wisconsin Constitution instead of relying solely on the United States Constitution, my analysis might be different. This court is not "bound by the minimums which are imposed by the Supreme Court of the United States if it is the judgment of this court that the Constitution of Wisconsin and the laws of this state

require that greater protection of citizens' liberties ought to be afforded." *State v. Doe,* 78 Wis. 2d 161, 172, 254 N.W.2d 210 (1977). For a time, *Dagnall* set forth a workable standard for those in the criminal justice system and, in my view, articulated a sound and fair rule.

¶ 158. However, in the wake of *Montejo v. Louisiana,* 556 U.S. ___, 129 S. Ct. 2079 (2009), *Dagnall,* which relied solely on the federal constitution, can no longer be viewed as the law in this state—unless this court was to now rely on the Wisconsin Constitution to uphold *Dagnall* and the principles stated therein. Absent that reliance on the state constitution, that is, without applying "new federalism," *Dagnall* is no longer good law. Because I would adhere to the long-standing principle that we follow the United States Supreme Court's interpretation of the Sixth Amendment when interpreting the parallel provision, Article I, Section 7, of our state constitution, *see State v. Klessig,* 211 Wis. 2d 194, 202–03, 564 N.W.2d 716 (1997), it is my view that this court is required to follow the Supreme Court's clear decision in *Montejo.*[1]

¶ 159. For that reason, I join Justice Crooks' writing and respectfully dissent.

¶ 160. I am authorized to state that Justice MICHAEL J. GABLEMAN joins this dissent.

---

[1] In this case, law enforcement acted in direct contravention of clear, then-existing law under *State v. Dagnall,* 2000 WI 82, 236 Wis. 2d 339, 612 N.W.2d 680. I do not condone that action. However, given the Supreme Court's subsequent decision in *Montejo v. Louisiana,* 556 U.S. ___, 129 S. Ct. 2079 (2009), there is no recourse for law enforcement's violation of *Dagnall.*